RECEIPT # 66535
AMOUNT $ 200
SUMMONS ISSUED Y-2
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. VB
DATE 8-30-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

| | |
|---|---|
| JENNIFER PADELLARO, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| JAMES MCGRAVEY and ) | |
| CITY OF LAWRENCE ) | |
| Defendant, ) | |

05 cv 11788 MLW

MAGISTRATE JUDGE Dein

NOW COMES, the Plaintiff, Jennifer Padellaro (hereinafter "Padellaro"), by her

attorney, Richard C. Bardi, who alleges the following:

## NATURE OF THE ACTION

1.    This is an action for compensatory and punitive damages proximately resulting

from the intentional violation of Padellaro's rights as guaranteed by reason of Title VII,

42 U.S.C. §2000e *et. seq.*

## JURISDICTION

2.    The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

Padellaro's state law claim is interposed in accordance with the Court's supplemental

jurisdiction, 28 U.S.C. §1367.  With respect to the Title VII claim, on or about December

15, 2004, the Plaintiff duly filed a Charge of Discrimination with the United States Equal

Employment Opportunity Commission and Massachusetts Commission Against

Discrimination.  In a letter dated June 3, 2005, the EEOC issued to her a Notice of Right

to Sue on that Charge. (*See*, Exhibit 1, attached).

## PARTIES

3.    The Plaintiff, Padellaro, is a citizen of the Commonwealth of Massachusetts, who currently resides at 36 Hansom Drive, Merrimac, Essex County, Massachusetts 01860.

4.    The Defendant, James McGravey (hereinafter "McGravey"), at all times relevant hereto, was the former Clerk of the City of Lawrence, Essex County, Massachusetts, who resides at 14 Mount Vernon Circle, Lawrence, Essex County, Massachusetts 01843.

5.    The Defendant, City of Lawrence, is a city located in Essex County, Massachusetts, with its municipal building located at 200 Common Street, Lawrence, Essex County, Massachusetts 01840.

## FACTS

6.    In or about July 1987, Padellaro began working in the City of Lawrence Clerk's office under Charles Nyhan. At that time, McGravey was the Assistant City Clerk.

7.    In or about 1989, McGravey was appointed City Clerk for the City of Lawrence.

8.    In or about August 1993, Padellaro was appointed Assistant City Clerk for the City of Lawrence.

9.    At the commencement of Padellaro's employment with the City of Lawrence
      Clerk's Office, the Plaintiff enjoyed a good working relationship with McGravey.

10.   This good working relationship began to change in or about the summer of 1995,
      when Padellaro informed McGravey that she was pregnant, at which time,
      McGravey's attitude and demeanor toward Padellaro changed.

11.   In late December of 1995, McGravey refused to allow Padellaro to "borrow" sick
      time from co-workers, as well as from her husband, David Padellaro, then a
      Lawrence Police Officer, despite the fact that such a practice was commonplace.

12.   On March 2, 1996, Padellaro gave birth to a son, but returned to her job only six
      (6) weeks after giving birth, and not six (6) months later, which her contract
      provided for, out of fear that she would lose her job.

13.   Padellaro was informed by her co-workers that she may lose her job if she did not
      return to work soon, as McGravey was upset that she was on maternity leave.

14.   In or about September of 1996, Padellaro spent her lunch hour in the City
      Council's Office and would commonly eat with several of the female employees.

15.  During this time, McGravey would join Padellaro and the other women for lunch. However, it was extremely bothersome to the group, as McGravey would repeatedly tell stories of a graphic explicit sexual nature.

16.  During this time, McGravey's wife, Carol Hajjar McGravey, the then-Attorney for the City of Lawrence, would occasionally join the group for lunch. However, during these lunches, McGravey would act civilly and would not inject his normal crass, offensive and sexually explicit stories into the conversations.

17.  Eventually, all the women, including Padellaro, stopped eating lunch in the City Council Office, out of fear that McGravey would continue to show up and harass them.

18.  In or about 1998, McGravey began to visit X-rated websites on the Internet. In particular, McGravey visited a site called "Flash Mountain", which posted pictures of women who would "flash" the camera, exposing their bare breasts, on the Splash Mountain ride at Disney World.

19.  McGravey stated that he believed that one of the women "flashing" the camera looked like Padellaro. McGravey commented how he liked the Plaintiff's "breasts" and showed the site to other employees in the office.

4

20.    The next day, McGravey went into the Clerk's office with a copy of the picture he
       had printed off his computer at home. McGravey showed it to employees in the
       office and then gave it to Padellaro and told her to go home and show it to her
       mother.

21.    Nearly a year later, in or about October of 1999, Padellaro's brother, Gary, visited
       the Clerk's office. During Padellaro's conversation with her brother, McGravey
       asked Padellaro's brother if had the Internet at home. McGravey told Padellaro's
       brother that he should visit the website "Flash Mountain" to see the topless
       photograph of his sister, the Plaintiff, Jennifer Padellaro.

22.    In or about September of 1998, Padellaro was pregnant with her second child and
       was again ordered by her doctor to leave work early. Once again, McGravey
       refused to allow Padellaro to borrow sick time from co-workers and her Husband,
       David, then a Lawrence Police officer.

23.    Prior to the time of McGravey's refusal to allow Padellaro to borrow sick time,
       McGravey personally contributed his sick days to another woman at City Hall.

24.    In or about early 1999, Padellaro began to notice increased use of the Internet by
       McGravey, in particular, on pornographic, sexually explicit, X-rated web sites
       that had naked males and females performing sexual acts.

5

25.    At or about this time, Padellaro was working with a female co-worker when the
       website "Whitehouse", a pornographic website, popped up on Padellaro's
       computer. Padellaro's co-worker stated "what the heck is that". McGravey went
       to Padellaro's desk and said, "Jenn, where have you been"? McGravey denied
       that it was his doing, but this was a site that McGravey had mentioned many times
       in the past.

26.    It was obvious to Padellaro that McGravey was using her computer to view
       pornographic websites in an attempt to make it appear as if she had logged on to
       the computer and accessed the websites herself.

27.    By May of 1999, Padellaro was so concerned with McGravey using her computer
       to visit pornographic sites that she made an appointment with an Assistant City
       Attorney to discuss the matter. Padellaro informed the Assistant City Attorney of
       the fact that McGravey was using her computer to undertake such activities.
       Padellaro did not go to the City Attorney, Carol Hajjar McGravey, as she was the
       Defendant, James McGravey's, wife.

28.    Padellaro explained to the Assistant City Attorney that she was reporting this to
       him in an attempt to protect herself, as she was fearful that such activity by
       McGravey would be blamed on her, as it was her computer. The Assistant City
       Attorney agreed to keep the issue private, as Padellaro was fearful of being
       terminated from her position.

6

29.    At or about this time, Padellaro asked the MIS Director to remove all Internet access from her computer so that she would not have to be constantly fearful that such websites were being accessed from her computer by McGravey.

30.    The MIS Director denied Padellaro's request to remove the Internet from her computer, but agreed to give Padellaro a password.

31.    While installing the password on Padellaro's computer, the MIS Director stated to Padellaro, "Jimmy has quite the little porno problem", in reference to the Defendant, McGravey.

32.    However, without Padellaro's knowledge or approval, the MIS Director gave McGravey the password to her computer.  When Padellaro questioned the MIS Director as to why he would release the password to McGravey he stated, McGravey's "the boss".  He further denied Padellaro's request for a private password.

33.    In the fall of 1999, Padellaro became aware that McGravey was contacting "call girls" and "escort services" under her e-mail address and name.  McGravey was also visiting websites such as "Daddy's Little Girls" and the "Best Fu… Transsexuals On The Net".

34.   At or about this time, Padellaro was further informed by a co-worker that
      McGravey was showing employees a picture on the Internet of a "well endowed"
      man. This co-worker advised Padellaro of such, in order to warn her of
      McGravey's intention to show Padellaro the picture. Padellaro heard McGravey
      telling other employees in the Clerk's Office to help him to find this picture on
      the Internet, as he could not remember the website that they were located on and
      he wanted Padellaro to view the picture.

35.   In or about March 2000, a memorandum was issued by the Personnel Department,
      which was similar to the e-mail that the employees received in or about 1999, and
      repeated that each employee was informed of the City's policy regarding e-mail
      use and use of the Internet and that anyone found to violate these policies could
      be reprimanded by termination. This memorandum required each employee sign
      at the bottom acknowledging he/she read and understood the policy.

36.   Padellaro refused to sign this policy, along with a number of other women in the
      office, as she was fearful that she would be subject to discipline as a result of
      McGravey's actions on her computer. Padellaro was aware that McGravey was
      constantly on her computer visiting such websites, which she feared would be
      wrongfully attributed to her.

8

37.   Despite Padellaro's numerous complaints to McGravey, he would continue to use
      her password, which he obtained from the City of Lawrence over her objection, to
      access filthy, explicit and gross sexual images.

38.   McGravey continued his pattern of making inappropriate sexual remarks and
      viewing pornographic images after he signed the City's policy in March of 2000.

39.   The Personnel Director for the City of Lawrence, at this time, was Lawrence P.
      Lefebre, who was a former Mayor of the City of Lawrence, Massachusetts.

40.   McGravey had been employed as Mayor Lefebre's Mayoral Aide in the late
      1970's into the early 1980's and Mayor Lefebre appointed McGravey as the
      Assistant City Clerk in or about 1983.

41.   Padellaro was losing sleep and suffering from headaches as a result of
      McGravey's actions and felt intimidated at work.  Moreover, Padellaro was
      fearful of complaining to Lefebre, as she was fearful that her job would be placed
      in jeopardy.

42.   At this time, Padellaro contacted Attorney Richard K. Sullivan.

43.   On April 12, 2000, Attorney Richard K. Sullivan, sent a letter to Lawrence P.
      Lefebre, Personnel Director for the City of Lawrence, in which he detailed the

9

actions of McGravey, including McGravey's viewing of pornographic websites

from Padellaro's computer, as well as arranging for meetings with "call girls" and

"escort services" through Padellaro's e-mail.

44.    On May 8, 2000, Mr. Lefebre responded to Attorney Sullivan's letter and stated

that he "agreed with the charges and allegations made against" McGravey by

Padellaro.  Lefebre further wrote that McGravey would be required to write a

letter of apology to Padellaro and be ordered to enroll in a course which included

one-on-one counseling about sexual harassment and hostile work environments.

45.    Despite assurances from the City of Lawrence, McGravey continued to cause

Padellaro to feel sexually harassed and to work in a hostile work environment.

46.    To date, Padellaro has never received an apology letter from McGravey and, upon

information and belief, McGravey has only attended one (1) session on sexual

harassment and/or hostile work environments.

47.    Mr. Lefebre also indicated that he placed a letter in Padellaro's file stating that the

City of Lawrence determined that Padellaro had not violated the City's policies

concerning e-mail/Internet access policy and that any such contacts which were

made to pornographic websites or e-mails were not authorized by Padellaro.

48.     On May 15, 2000, Padellaro's Attorney, Richard K. Sullivan, responded to Mr.
        Lefebre's letter, in which Mr. Lefebre indicated that the matter was closed, based
        on the fact that the felt that she could work with McGravey without worrying
        about a continued hostile work environment, which was completely false.

49.     Attorney Sullivan indicated to Mr. Lefebre that this matter was not closed, but
        rather, only that McGravey's behavior may change temporarily. Unfortunately,
        this behavior did not change.

50.     On or about May 26, 2000, Mr. Lefebre responded to Attorney Sullivan's letter
        and agreed with Attorney Sullivan that he too did "not consider the matter closed
        because of a brief period of improved behavior" by McGravey.

51.     Shortly after this time, McGravey began an extramarital affair which the entire
        office was privy to.  This affair lasted until McGravey's father's death in 2002.
        During this time, McGravey would commonly state how sexually liberal his
        mistress was, how they would shop at sex stores together, and he would
        frequently ask for Padellaro's opinions on Internet purchases he was
        contemplating for his mistress and his wife at the same time.

52.     McGravey would frequently ask Padellaro how much she made per week.
        McGravey would then say how much he was paying his mistress per week,

11

implying that Padellaro too could have such a deal with him.  McGravey also

stated that Padellaro could be sitting home making more money, tax free.

53.    McGravey also asked Padellaro about another woman in the office, in an attempt

to determine if Padellaro thought that the other employee would be interested in

making that kind of money he was paying his mistress.  Moreover, in or about

2003 and into 2004, McGravey was also questioning Padellaro about a second

woman in the building being willing become his mistress.

54.    These comments towards Padellaro continued until the time of McGravey's

resignation.

55.    On or about June 14, 2004, McGravey showed two (2) of Padellaro's co-workers,

sexually graphic, naked photographs of himself and a woman named "Leslie",

who was allegedly his mistress on the website "Showmywife.com".  Padellaro is

the immediate supervisor of one of these women who was shown this photograph.

56.    McGravey had shown the employee the pictures of himself on a computer in

Padellaro's office while she was at lunch.  Upon Padellaro's return, the employees

first words to Padellaro were, "don't ever leave me alone with him again".

57.  Soon thereafter, McGravey told Padellaro about the sexual pictures that his "ex-mistress" had placed on a website, but McGravey couldn't show the pictures to Padellaro because the web server had replaced the pictures with new ones.

58.  At that time, Padellaro contacted her former attorney Richard K. Sullivan to discuss these continuing actions by McGravey.

59.  Upon his advice, Padellaro informed the Mayor of the City of Lawrence, Michael J. Sullivan, of McGravey's actions.

60.  As a result of these actions by McGravey, which have created an extremely hostile work environment, Padellaro has been subjected to gross sexual harassment.

61.  The City of Lawrence has been aware of McGravey's actions for years, but failed to address such action until, upon information and belief, he resigned in July 2004, but not before McGravey's actions and the City of Lawrence's refusal to address these actions by McGravey, caused Padellaro to suffer greatly, both physically and emotionally.

62.  On or about June 22, 2004, Padellaro had a meeting with Mayor Michael Sullivan regarding the continued hostile work environment that Padellaro was caused to endure in the City of Lawrence Clerk's Office.  At this meeting, Padellaro showed

the Mayor a copy of a letter she and her then-Attorney, prepared to submit to the City of Lawrence. Mayor Sullivan advised Padellaro that he would "take care of everything", including, advising Padellaro to take a paid leave commencing immediately.

63. On or about June 28, 2004, Mayor Sullivan contacted Padellaro and advised her that the City of Lawrence had investigated the matter, but that the City needed her to file a formal Complaint before the City could move forward with the results of their investigation.

64. On June 29, 2004, Padellaro, through her Counsel, sent a letter to Mayor Sullivan regarding the continued actions of the Defendant, James McGravey, and the continued lack of action by the Defendant, City of Lawrence, to address these complaints made by Padellaro.

65. In or about mid-July 2004, upon information and belief, City Council President Patrick Blanchette and City Councilor Gil Frechette, met with McGravey and advised him of their investigation and the results of same. At this time, Blanchette and Frechette advised McGravey that he could either resign or he would be fired. McGravey was given a short period of time to consider the City's offer.

14

66.    On July 12, 2004, within approximately twenty-four (24) hours after the meeting
with Blanchette and Frechette, McGravey forwarded his resignation to the City of
Lawrence via facsimile.

67.    After receiving his resignation on July 12, 2004, Blanchette called Padellaro via
telephone and advised her of such and asked when Padellaro would be returning
to work.  Blanchette also advised Padellaro that there was a special meeting being
held later that week to accept McGravey's resignation.

68.    During this telephone conversation with Padellaro, Blanchette further advised
Padellaro that the City Council had decided she would not be named as Acting
City Clerk in the absence of McGravey as such an appointment would "look bad".

69.    Approximately one half (½) hour after this telephone conversation ended,
Blanchette called Padellaro back, stating that the Eagle Tribune newspaper was
aware of the situation, had Padellaro's name and was fearful that his name was
going to be dragged into this incident.

70.    Padellaro returned to work on July 19, 2004, solely as a result of the request and
insistence of Blanchette that she do so "because the office needed her".

71.    Soon thereafter, Blanchette created an "ad hoc" committee to handle the City
Council's search for a new clerk.

15

72.    Padellaro advised Blanchette as to the rules of "open meetings" under G.L. c. 39,

§23A, including, but not limited to, the rules regarding the posting of meetings

and the keeping of minutes. As a result of Padellaro being a whistleblower,

Blanchette became visibly annoyed with Padellaro and informed other City

council members that Padellaro was questioning his decisions, which added to

Padellaro's hostile work environment and evidenced continuing retaliation by the

City.

73.    At or about this time, Padellaro further learned that Blanchette and McGravey

were speaking or e-mailing regularly regarding this matter.

74.    On or about August 19, 2004, City Councilor, Israel Reyes, Chairman of the

Personnel Committee and a member of the "ad hoc" committee, informed

Padellaro that other City Councilors wanted to meet with Padellaro's co-workers

in the Clerk's Office, but did not disclose the reason for such meetings. Reyes

further informed Padellaro that she could not be present for the meetings with her

co-workers, per the orders of Blanchette.

75.    Later that afternoon, Blanchette visited Padellaro in her office and questioned her

as to why she was "trying to start trouble again".

76.    Padellaro immediately reported this incident with Blanchette to Mayor Michael

Sullivan and further reported that she was very upset as a result of this incident.

16

77.     Subsequently, Padellaro was ordered out of work by her physician until late-
        September 2004.

78.     Since her recent complaints were addressed, Padellaro has further been the subject
        of a hostile work environment created by City Council President Patrick
        Blanchette and other City Council members.

79.     Moreover, on or about December 2, 2004, former Personnel Director and Mayor
        of Lawrence, Lawrence Lefebre, who at all times relevant hereto, was a paid
        voting member of the Retirement Board, went to the City of Lawrence Clerk's
        Office and confronted Padellaro.

80.     Mr. Lefebre was irate with Padellaro, exclaiming that "he had all the documents"
        and that she "would not get any money" from him.

81.     The actions of Mr. Lefebre further subjected Padellaro to a hostile work
        environment, which caused Padellaro to suffer fear and anxiety and forced
        Padellaro to leave work that day as a result of such fear and anxiety, which
        resulted in her hospitalization as a result of chest pains that she suffered from.

82.     Padellaro has been caused to suffer from severe emotional distress, including, but
        not limited to, sleeplessness, loss of appetite, nervousness, anxiety, humiliation,
        economic and mental health damages, and has had her ability to enjoy a normal,

                                            17

active and health life adversely effected. The Plaintiff has also been caused to

suffer a relapse of her pre-existing lupus. Additionally, McGravey's actions and

the City's lack of remedial action also caused Padellaro to seek treatment for the

emotional trauma that she has suffered.

83.    Padellaro's complaints and disclosures of McGravey's continuing actions and

violation of the City's Internet policy have resulted in others turning against her

and causing her to work under difficult situations and in a hostile work

environment.

### COUNT I

*(Intentional Infliction of Emotional Distress)*

Jennifer Padellaro v. James McGravey

84.    Padellaro hereby repeats and realleges each of the allegations contained in

paragraphs one (1) through eighty-three (83) as if set forth hereinafter.

85.    The Defendant, James McGravey, by and through his actions, did intentionally

cause Padellaro to suffer severe emotional distress.

86.    The Defendant, McGravey's, intentional acts were extreme, outrageous and

beyond all possible bounds of decency and utterly intolerable in a civilized

society.

18

87.    As a direct and proximate result of the Defendant, McGravey's, intentional acts,

Padellaro has been caused to suffer from severe emotional distress, including, but

not limited to, sleeplessness, loss of appetite, nervousness, anxiety, humiliation,

economic and mental health damages, and has had her ability to enjoy a normal,

active and health life adversely effected.


## COUNT II

### *(Negligence)*

### Jennifer Padellaro v. City of Lawrence


88.    Padellaro hereby repeats and realleges each of the allegations contained in

paragraphs one (1) through eighty-seven (87) as if set forth hereinafter.


89.    The Defendant, City of Lawrence, owed Padellaro a duty of reasonable care to

ensure that Padellaro was not subjected to a hostile work environment and sexual

harassment by employees of the City.


90.    The Defendant, City of Lawrence, breached that duty of care and allowed such

conduct to continue, despite the fact that the City of Lawrence was fully aware of

the hostile work environment and sexual harassment that Padellaro was forced to

endure.

91.    As a direct and proximate result of the Defendant, City of Lawrence's,
       negligence, Padellaro has been caused to suffer from severe emotional distress,
       including, but not limited to, sleeplessness, loss of appetite, nervousness, anxiety,
       humiliation, economic and mental health damages, and has had her ability to
       enjoy a normal, active and health life adversely effected.

## COUNT III

*(Violation of Title VII, 42 U.S.C. §2000e et. seq. –*
*Hostile Work Environment - Sexual Harassment)*

Jennifer Padellaro v. James McGravey

92.    The Plaintiff hereby repeats and realleges each of the allegations contained in
       paragraphs one (1) through ninety-one (91) as if set forth hereinafter.

93.    The Defendant, James McGravey, by and through his actions, did sexually harass
       Padellaro and cause Padellaro to work in a hostile work environment.

94.    The Defendant, McGravey's, intentional acts were extreme, outrageous and
       beyond all possible bounds of decency and utterly intolerable in a civilized
       society.

95.    As a direct and proximate result of the Defendant, McGravey's, intentional acts,
       Padellaro was caused to work in a hostile work environment, including, but not

20

limited to, being caused to suffer sexual harassment, and has been caused to suffer

from severe emotional distress, including, but not limited to, sleeplessness, loss of

appetite, nervousness, anxiety, humiliation, economic and mental health damages,

and has had her ability to enjoy a normal, active and health life adversely effected.

## COUNT IV

*(Violation of Title VII, 42 U.S.C. §2000e et. seq. –*
*Hostile Work Environment - Sexual Harassment)*
Jennifer Padellaro v. City of Lawrence

96.    The Plaintiff hereby repeats and realleges each of the allegations contained in
       paragraphs one (1) through ninety-five (95) as if set forth hereinafter.

97.    The Defendant, City of Lawrence, by and through their action, did sexually harass
       Padellaro and cause Padellaro to work in a hostile work environment.

98.    The Defendant, City of Lawrence's, intentional acts were extreme, outrageous
       and beyond all possible bounds of decency and utterly intolerable in a civilized
       society.

99.    As a direct and proximate result of the Defendant, City of Lawrence's, intentional
       acts, Padellaro was caused to work in a hostile work environment, including, but
       not limited to, being sexually harassed and has been caused to suffer from severe

21

emotional distress, including, but not limited to, sleeplessness, loss of appetite,

nervousness, anxiety, humiliation, economic and mental health damages, and has

had her ability to enjoy a normal, active and health life adversely effected.


## COUNT V

*(Violation of M.G.L. c. 149, §185 – "Whistleblower")*

<u>Jennifer Padellaro v. The City of Lawrence</u>


100.   Padellaro hereby repeats and realleges each of the allegations contained in

      paragraphs one (1) through ninety-nine (99) as if set forth hereinafter.


101.   The Defendant, City of Lawrence, by and through their action, did retaliate

      against Padellaro for disclosing the conduct of the Defendant, James McGravey,

      including, but not limited to, not naming Padellaro Acting-Clerk for the City of

      Lawrence, not naming Padellaro as successor Clerk for the City of Lawrence,

      allowing the City Council President to accuse Padellaro of being a

      "troublemaker" and not complying with the "open meetings" laws under G.L. c.

      39, §23A.


102.   As a direct and proximate result of the Defendant, City of Lawrence's, conduct,

      Padellaro was caused to suffer from adverse employment action taken against her

      in the terms and conditions of employment.

103.   As a direct and proximate result of the Defendant, City of Lawrence's, conduct,

Padellaro is entitled to three (3) times the lost wages, benefits and other

renumeration, and interest thereon and recovery of reasonable costs and attorney's

fees.

**WHEREFORE**, the Plaintiff, Jennifer Padellaro, demands judgment against the

Defendants, James McGravey and the City of Lawrence, awarding such compensatory

and punitive damages together with interest, costs, attorney's fees and such other and

further relief as this Honorable Court deems just and proper.

### JURY DEMAND

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON EACH
CLAIM ASSERTED OR HEREAFTER ASSERTED IN THE COMPLAINT, AND ON
EACH   DEFENSE   ASSERTED   OR   HEREAFTER   ASSERTED   BY   ANY
DEFENDANT.

                                       Respectfully submitted,
                                       Jennifer Padellaro, Plaintiff,
                                       By her Attorney,

                                       Richard C. Bardi / BBO #542797
                                       Law Office of Richard C. Bardi
                                       6 Beacon Street, Suite 410
                                       Boston, Massachusetts 02108
                                       Phone: (617) 227-4040

Dated: August 30, 2005

23

**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
3510 3627

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

Ms. Jennifer Padellaro
c/o Richard C. Bardi, Esquire
Law Office of Richard C. Bardi
Attorney at Law
6 Beacon St., Ste. 410
Boston, MA  02108

June 3, 2005

Re:  EEOC Charge Against Comonwealth of Massachusetts, City of Lawrence, et al.
     No. 16C200500488

Dear Ms. Padellaro:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and the Commission has determined that it
will not be able to investigate and conciliate that charge within
180 days of the date the Commission assumed jurisdiction over the
charge and the Department has determined that it will not file any
lawsuit(s) based thereon within that time, and because you through
your attorney have specifically requested this Notice, you are
hereby notified that you have the right to institute a civil action
under Title VII of the Civil Rights Act of 1964, as amended, 42
U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

Sincerely,

R. Alexander Acosta
Assistant Attorney General
Civil Rights Division

by

Karen L. Ferguson
Civil Rights Analyst
Employment Litigation Section

cc:  Boston Area Office, EEOC
     Comonwealth of Massachusetts, City of Lawrence, et al.

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

Jennifer Padellaro

**DEFENDANTS**

James McGravey and City of Lawrence

**(b)**  County of Residence of First Listed Plaintiff    Essex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Essex
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Richard C. Bardi, Law Office of Richard C. Bardi
6 Beacon Street, Suite 410, Boston, MA, 02108 (617) 227-4040

Attorneys (If Known)

Thomas E. Peisch, Esq., Conn, Kavanaugh, Rosenthal, Peisch & Ford
James W. Bucking, Esq., Foley Hoag, LLP

## II.  BASIS OF JURISDICTION  (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V.  ORIGIN  (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1  Original Proceeding | ☐ 2  Removed from State Court | ☐ 3  Remanded from Appellate Court | ☐ 4  Reinstated or Reopened | ☐ 5  Transferred from another district (specify) | ☐ 6  Multidistrict Litigation | ☐ 7  Judge from Magistrate Judgment |

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title VII, 42 U.S.C. sec. 2000e, et. seq.

Brief description of cause:
Sexual Harrassment and Negligence

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $
500,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):    JUDGE                                    DOCKET NUMBER

DATE  8/30/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT                APPLYING IFP                JUDGE                    MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)_____Jennifer Padellaro v. City of Lawrence, et. al._____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| [ ] | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
| [ ] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases |
| [ ] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
| [✓] | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
| [ ] | V. | 150, 152, 153. |

05 - 1 1 7 8 8 MLW

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                    YES [ ]        NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                                                    YES [ ]        NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                    YES [ ]        NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                    YES [ ]        NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                    YES [✓]        NO [ ]

   A.    If yes, in which division do all of the non-governmental parties reside?

         Eastern Division  [✓]          Central Division  [ ]          Western Division  [ ]

   B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

         Eastern Division  [✓]          Central Division  [ ]          Western Division  [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                                    YES [ ]        NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME    Richard C. Bardi / BBO #542797

ADDRESS    6 Beacon Street, Suite 410, Boston, Massachusetts 02108

TELEPHONE NO.    (617) 227-4040

(CategoryForm.wpd - 5/2/05)