# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**Civil Action No. 05-CV-11788-MLW**

|  |  |
|---|---|
| **JENNIFER PADELLARO,**<br>**Plaintiff** | ) |
|  | ) |
|  | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **JAMES MCGRAVEY and** | ) |
| **CITY OF LAWRENCE,** | ) |
| **Defendants** | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR LEAVE OF COURT TO AMEND PLAINTIFF'S COMPLAINT

Plaintiff has moved, *unopposed by the City of Lawrence*, for leave to amend her Complaint to add the following claims: (1) Negligent infliction of emotional distress against James McGravey (hereinafter referred to as "McGravey") (Count II); (2) liability under the Massachusetts Tort Claims Act against the City of Lawrence (hereinafter referred to as "the City") (Count III); (3) violation of M.G.L. c. 151B, sexual harassment, based on a hostile work environment, against McGravey (Count VIII); violation of M.G.L. c. 151B, sexual harassment, based on a hostile work environment, against the City (Count IX); violation of M.G.L. c. 151B, retaliation against McGravey (Count X); and violation of M.G.L. c. 151B, retaliation against the City (Count XI). With the exception of Count I, intentional infliction of emotional distress, all claims in Plaintiff's Complaint have been renumbered in the Amended Complaint.

## I. Background

This action arose out of the City Clerk's sexual harassment of Plaintiff, the Assistant City Clerk, over a 6-year period; the City's failure to effectively stop the harassment and protect Plaintiff from a hostile work environment; and retaliation against Plaintiff by McGravey and City officers, agents, and employees after she reported the harassment to the Mayor, in June 2004, which led to McGravey's resignation. Plaintiff filed her Complaint on August 30, 2005, in which she alleged intentional infliction of emotional distress against McGravey (Count I); negligence against the City (Count II); violation of Title VII against McGravey (Count III); violation of Title VII against the City (Count IV); and violation of M.G.L. c. 149, § 185, the state "Whistleblower" statute (Count V).

## II. Arguments

### A.    There Was Notice of Tort Claims Act and Negligent Infliction Claims

In letters, dated September 30, 2004, Plaintiff's then attorney, made presentment to the City, pursuant to the Massachusetts Tort Claims Act, M.G.L. c. 258, § 4, and to McGravey, who was no longer a City employee, of Plaintiff's intention to bring an action against them.  Plaintiff's attorney specifically stated that claims of negligent infliction of emotional distress and intentional infliction of emotional distress would be included in Plaintiff's civil suit. *Bardi Letters*, *Exhibit 1*. Pursuant to the Tort Claims Act, the City is liable for McGravey's negligent acts, and if McGravey is indemnified, his intentional torts, when "[a]cting within the scope of his office or employment." M.G.L. c. 258, §§ 1, 9, 13.

2

In the Complaint, Plaintiff's then attorney did not include claims for negligent infliction of emotional distress or violation of the Tort Claims Act, notwithstanding his prior notice to the defendants. Plaintiff now seeks to conform her claims to the notice given in her presentments. Given that by virtue of the presentment letter, the defendants received notice of Plaintiff's intention to file these claims, their inclusion in the Amended Complaint does not pose a surprise to, nor prejudice, the defendants. Further, since McGravey may or may not be indemnified by the City, prudence requires that Plaintiff file claims alleging both negligent infliction and intentional infliction of emotional distress.

**B.    M.G.L. c. 151B Sexual Harassment Claims Mirror the Title VII Claims**

Plaintiff's added Chapter 151B sexual harassment claims against McGravey and the City, respectively, are state law analogs to the federal Title VII claims, which Plaintiff alleged against McGravey and the City in her original Complaint (Counts III & IV). Given that Chapter 151B, along with its attendant case law, are generally considered more "plaintiff friendly" than federal anti-discrimination laws, Plaintiff seeks to include sexual harassment claims based on both state law and federal law in her Amended Complaint. *Rossiter v. International Bus. Mach. Corp.*, 2005 U.S. Dist. LEXIS 24543, *24 (D. Mass. 2005) (noting that Chapter 151B appears to be more friendly to plaintiffs than federal anti-discrimination law). Defendants have not moved to dismiss Plaintiff's Title VII sexual harassment claims, and Plaintiff should not be denied the addition

of analogous, state-law based claims, which mirror her federal sexual harassment claims.

**C.    Plaintiff Has Pled Facts Which Support Retaliation Claims**

Plaintiff pled, in both her MCAD charge and her original Complaint, actions taken against her by McGravey and City officers, agents, and employees, after she complained to the Mayor, in late June 2004, about McGravey's sexual harassment. *Exhibit 2, MCAD Charge; Complaint,* ¶¶ 59-83. While these actions comprised part of Plaintiff's hostile work environment, they were triggered by Plaintiff's complaint to the Mayor, a protected activity, and McGravey's subsequent resignation. Thus, these actions constituted retaliation against Plaintiff, a claim which is separate and distinct from Plaintiff's sexual harassment/hostile work environment claims. *Clifton v. Massachusetts Bay Transp. Auth.,* 445 Mass. 611, 616 (2005) (Unlawful retaliation may "consist of a continuing pattern of behavior that is, by its insidious nature, linked to the very acts that make up a claim of hostile work environment."). Plaintiff has further fleshed out retaliatory conduct against her, from late June 2004 to December 2, 2004, in her Amended Complaint. *Amended Complaint,* ¶¶ 62-64, 68-88.

## Conclusion

For all of the aforestated reasons, Plaintiff respectfully requests that the Court grant her Motion for Leave of Court to Amend Plaintiff's Complaint to include additional facts, allegations, and claims against the defendants. In this case, both judicial economy and justice would be served by the granting of

Plaintiff's motion; the defendants will not be prejudiced; and the City does not oppose Plaintiff's motion.

Respectfully submitted,

Jennifer Padellaro
By her Attorneys,

/s/ Linda Evans
Kevin G. Powers, BBO #405020
Linda Evans, BBO #635078
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, MA 02108
(617) 742-7010

MemoSuppMotAmend

EXHIBIT 1

LAW OFFICE
OF

# RICHARD C. BARDI

6 BEACON STREET
SUITE 410
BOSTON, MASSACHUSETTS 02108
Telephone 617-227-4040
Facsimile 617-227-3388

*Richard C. Bardi*
*Admitted to Practice in*
*Massachusetts and New York*

*Michael P. Judge*

September 30, 2004

<u>VIA UPS</u>

Michael J. Sullivan, Mayor
City Hall, City of Lawrence
200 Common Street
Lawrence, MA 01840

Re: <u>**Jennifer E. Padellaro v. City of Lawrence, James McGravey, Patrick Blanchette, et al.**</u>

Dear Mayor Sullivan:

Please be advised that I have been retained by Jennifer E. Padellaro to pursue an action against the City of Lawrence, its agents, servants and employees, including but not limited to James McGravey, Lawrence P. LeFebre, Patrick Blanchette, and former members of the City Attorneys Office relative to the actions by the City Clerk, James McGravey from in or about April, 1996 until his resignation on July 13, 2004 and the hostile work environment caused by Lawrence LeFebre, Patrick Blanchette and others.

It is my understanding that you are intimately familiar with the allegations that Jennifer Padellaro complained of regarding James McGravey's outrageous, open and notorious sexual harassment and hostile work environment such that Mrs. Padellaro was subjected to intentional infliction of emotional distress, and negligent infliction of emotional distress, all of which has caused her to have her normal and usual activities adversely affected and requiring medical treatment.

It is apparent from the history of this matter that Lawrence LeFebre, Personnel Director, yourself, former Mayor Patricia Dowling, as well as former members of the City Attorney's Office are well aware that James McGravey used pornographic web sites while working as City Clerk for the City of Lawrence, was sexually harassing Jennifer Padellaro and other clerks in her office, that Mr. McGravey had used Jennifer Padellaro's E-Mail address to solicit prostitutes, arrange for meetings with so-called mistresses, all of which was either ignored and/or condoned by yourself, the Personnel Director, Mr. LeFebre, and former members of the City Attorney's Office.

Michael J. Sullivan, Mayor
City Hall, City of Lawrence
September 30, 2004
Page Two


Moreover, despite the fact that Mrs. Padellaro made complaints about Mr. McGravey's behavior and he was allegedly required to submit not only an apology letter but to attend counselling, it is expected that no such counselling was ultimately obtained and certainly the City of Lawrence, through its agents, servants and employees, yourself and the Personnel Director and the City Attorney's Office all conspired or turned a blind eye towards his activities such that he did not get the necessary mental health treatment that he needed.

I am incorporating herein the statements and allegations made within letters submitted to you or Lawrence LeFebre by Mrs. Padellaro's former attorney, Richard Sullivan, dated May 15, 2000, June 29, 2004 and July 9, 2004. Additionally, I am enclosing herewith a letter sent by Lawrence LeFebre dated May 8, 2002 to Jennifer Padellaro. I am attaching a small portion of some of the E-Mails that we have obtained reflecting the use of the City of Lawrence computers by Mr. McGravey while he was working that created a hostile working environment and was the source of intentional emotional distress and sexual harassment which include, but are not limited to, E-Mail dated October 1, 1999, to New England Escorts, E-Mail dated October 6, 1999, directed to Diamonds 80, E-Mail dated December 7, 1999 sent to Kute Kammy, undated E-Mail referring to a "Very Generous Andover Male is interested" and sent to Vote.Honey a "Flash Mountain #2" photograph that Mr. McGravey told Mrs. Padellaro and others depicted her as topless on a Disney ride known as Flash Mountain dated April 14, 1998, a sexually explicit joke from the Internet dated January 5, 2000 and a memorandum dated March 14, 2000 signed by Mr. McGravey indicating he was made aware of the City of Lawrence E-Mail/Internet policy which was given to Mrs. Padellaro by Lawrence LeFebre.

It is apparent from our investigation and speaking with numerous individuals that the City of Lawrence condoned James McGravey behavior and certainly did nothing meaningful to stop his behavior and arrange for this ill individual to get necessary mental health treatment to stop him from sexually harassing and causing a hostile work environment for Mrs. Padellaro. Neither the Personnel Director nor former members of the City Attorney's Office took appropriate action or tried to get the relief that Mrs. Padellaro needed in order to conduct herself in the workplace without harassment by Mr. McGravey. It is my understanding that Mr. McGravey's wife worked in the City of Lawrence Law Department which may be one of several reasons why neither the Mayor's Office nor the Personnel Department took the appropriate action against Mr. McGravey or tried to protect Mrs. Padellaro from his actions.

Michael J. Sullivan, Mayor
City Hall, City of Lawrence
September 30, 2004
Page Three


City Councillor Patrick Blanchette has further aggravated the situation by instigating and promoting a hostile work environment since Mr. McGravey's resignation. At no time did Mrs. Padellaro consent to the release of her name or confidential material contained within her personnel file that you and others within the City of Lawrence administration released to newspapers and third parties. The violation of her privacy rights gives rise to her claim of violation of her civil rights as guaranteed by the United States Constitution and Massachusetts Declaration of Rights.

Accordingly, given the fact that you are well aware of the long and torrid history of Mr. McGravey's behavior directed at Jennifer Padellaro it seems to me that it is unnecessary to provide the City of Lawrence any lengthy period of time in order to investigate this claim. Therefore, kindly have a representative or an attorney contact me within ten days if you wish to try to resolve this matter on mutually favorable terms and conditions. After that time I will assume that you will continue to try to ignore this matter at which time suit shall be filed against all individuals named herein for individual and vicarious liability.

Very truly yours,


Richard C. Bardi

RCB:kom
Enclosure
cc: Charles Boddy, Esquire

LAW OFFICE

OF

# RICHARD C. BARDI

6 BEACON STREET
SUITE 410
BOSTON, MASSACHUSETTS 02108
Telephone 617-227-4040
Facsimile 617-227-3388

*Richard C. Bardi*
*Admitted to Practice in*
*Massachusetts and New York*

*Michael P. Judge*

September 30, 2004

**VIA UPS**

James A. McGravey
14 Mount Vernon Circle
Lawrence, MA 01843

Re:    **Jennifer Padellaro v. James McGravey, City of Lawrence, et al.**

Dear Mr. McGravey:

Please be advised that I represent the interests of Jennifer Padellaro relative to your conduct directed at her while you were the City Clerk for the City of Lawrence.

You were well aware of the fact that you performed a number of outrageous acts directed at Jennifer Padellaro, including but not limited to, creating a hostile work environment, intentional infliction of emotional distress, lewd and lascivious behavior and sexual harassment.

Your perversion with the Internet and contacting homosexual sites, prostitution sites, causing Jennifer Padellaro to see pornographic web sites, using her E-Mail address to arrange for rendezvous with prostitutes and so-called mistresses and escorts. Needless to say, I do not have to go into great detail, as you are well aware of your conduct directed at Mrs. Padellaro.

Hopefully, since your resignation from the City of Lawrence you have obtained the necessary mental health treatment that an individual such as yourself should receive. Regardless, it is our intention to bring an action against you which will expose you for the sick individual that you are and recover compensation for Mrs. Padellaro.

Accordingly, kindly have your attorney contact me within ten days after which time suit shall be filed if I don't hear from your attorney.

Very truly yours,

Richard C. Bardi

RCB:kom

EXHIBIT 2

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

☐ FEPA
☐ EEOC

## MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
*State or local Agency, if any*    and EEOC

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Jennifer Padellaro | (978) 682-7089 |

| STREET ADDRESS    CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| 7 South Bowdoin Street, Lawrence, Massachusetts 01843 | 1/25/63 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| City of Lawrence | 100+ employees | (978) 794-5803 |

| STREET ADDRESS    CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 200 Common Street, Lawrence, Massachusetts 01843 | Essex |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| James A. McGravey | unknown |

| STREET ADDRESS    CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 14 Mount Vernon Circle, Lawrence, Massachusetts 01843 | Essex |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE    ☐ COLOR    ☐ SEX    ☐ RELIGION    ☐ AGE
☐ RETALIATION    ☐ NATIONAL ORIGIN    ☐ DISABILITY    ☒ OTHER *(Specify)* (Sexual Harrassment & Hostile Work Environment)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)    LATEST (ALL)
April 1996 to July 12, 2004 and continuing.

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

\* See Attachment \*

DEC 15 2004

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their proceedures. | NOTARY *(When necessary for State and Local Requirements)* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| Date    Charging Party *(Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)* |

EEOC FORM 5 (Test 10/94)

## ATTACHMENT TO CHARGE OF DISCRIMINATION

Complainant:  Jennifer Padellaro

Respondent:  City of Lawrence, Massachusetts and
James McGravey, Former City Clerk, City of Lawrence, Massachusetts

In or about July 1987, I began working in the City of Lawrence Clerk's office under Charles Nyhan. James McGravey (hereinafter "McGravey") was the Assistant City Clerk. McGravey was appointed City Clerk in or about 1989 and I was appointed Assistant City Clerk in August of 1993.

In or about April of 1996, I spent my lunch hour in the City Council's Office. Commonly, I would eat with several of the female employees. During this time, McGravey would join our group for lunch. However, it was extremely bothersome to our group, as McGravey would repeatedly tell stories of a graphic explicit sexual nature. During this time, McGravey's wife, Carol Hajjar McGravey, the City Attorney for the City of Lawrence, would occasionally join our group for lunch. During these times, McGravey would act civilly and would not inject his normal crass, offensive and sexually explicit stories into our conversations. Eventually, all the women stopped going to lunch in the City Council Office, in fear that McGravey would continue to show up and harass us.

In or about 1998, McGravey began to visit X-rated websites on the Internet. In particular, McGravey visited a site called "Flash Mountain", which posted pictures of women who would "flash" the camera, exposing their bare breasts, on the Splash Mountain ride at Disney World. McGravey stated that he believed that one of the women "flashing" looked like me. He commented how he liked "my breasts" and began showing the site to employees in the office. The next morning McGravey came into the office with a copy of the picture he had printed off his computer at home and after he finished showing the picture around he gave it to me and told me to go home and show my mother. In October of 1999, my brother, Gary, visited me in the office. During a conversation with my brother, McGravey asked him if he had the Internet at home. When he responded "yes" McGravey told him he should visit the web site "Flash Mountain" to see the photograph of myself, which McGravey believed to me although it was not, topless.

By late 1998 and early 1999, I began to notice increased use of the Internet by McGravey, in particular, on pornographic, sexually explicit, X-rated web sites that had naked males and females performing sexual acts. At or about this time, I was working with a female co-worker when the web site "Whitehouse", a pornographic website, popped up on my computer. When the co-worker stated "what the heck is that" McGravey came over to my desk and said, "Jenn, where have you been?" He denied that it was his doing, but this was a site he had mentioned many times. It was obvious to me that he was using my computer to view pornographic websites in an attempt to make it appear as if I had logged on to the computer and accessed the websites myself.

By May of 1999, I was so concerned with McGravey using my computer to visit pornographic sites that I made an appointment with an Assistant City Attorney regarding the matter. At this time, McGravey's wife was the City Attorney, their very good friend was the sitting Mayor and there was no Personnel Director. I informed the Assistant City Attorney that McGravey was using my computer to undertake such activities. I explained that I was reporting this to him in an attempt to protect myself, as I was fearful that such activities would be blamed on me. The Assistant City Attorney agreed to keep the issue private, as I was fearful of disrupting the office and/or being terminated from my position.

At this time, I asked the MIS Director to remove all Internet access from my computer so that I would not have to be constantly fearful that such websites were being accessed from my computer. The MIS Director denied my request to remove the Internet from my computer. However, he agreed to give me a password. Upon installing the password, the MIS Director stated "Jimmy has quite the little porno problem". As a result of McGravey's actions, I was being sexually harassed and humiliated. Without my knowledge or approval, the MIS Director gave McGravey my password. When I questioned him why he would release the password to McGravey he stated "Jim's the boss". When I asked him for a private password, he refused.

In the fall of 1999, I became aware that McGravey was contacting "call girls" and "escort services" under my e-mail address and my name. McGravey was also visiting websites such as "daddy's little girls" and the "Best F… Transsexuals On The Net". At or about this time, I was informed by a co-worker that McGravey was showing employees a picture on the Internet of a "well endowed" man. This co-worker advised me of such to warn me of McGravey's intention to show me the picture. It was common for the women in the office to do so.

In or about March 2000, a memorandum was issued by the Personnel Department, which repeated that each employee was informed of the City's policy regarding e-mail use and use of the Internet and that anyone found to violate these policies could be reprimanded up to termination. This memorandum required each employee sign at the bottom acknowledging he/she read and understood the policy. I refused to sign this policy, along with a number of other women in the office, as I was fearful that I would be subject to discipline as a result of McGravey's actions on my computer. I was aware that McGravey was constantly on my computer visiting such websites, which I felt would be wrongfully attributed to me. Despite my complaints to McGravey, he would continue to use my password, which as explained earlier, he obtained from the City of Lawrence, over my objection, to access filthy, explicit and gross sexual images.

McGravey continued his conduct of making inappropriate sexual remarks and viewing pornographic images after he signed the City's policy in March of 2000.

The Personnel Director at this time was Lawrence P. Lefebre. Mr. Lefebre was a former Mayor of the City of Lawrence, Massachusetts. McGravey had been employed as

2

Mayor Lefebre's Mayoral Aide in the late 1970's into the early 1980's and Mayor Lefebre appointed McGravey as the Assistant City Clerk in or about 1983.

It was at this time that I contacted Attorney Richard K. Sullivan.

On April 12, 2000, my then Attorney Richard K. Sullivan, sent a letter to Lawrence P. Lefebre, Personnel Director for the City of Lawrence, in which he detailed the actions of McGravey, which included visiting pornographic websites from my computer, as well as arranging for meetings with "call girls" and "escort services". I was losing sleep over this and I felt intimidated at work. However, I felt that I could not complain anymore than I did, as my job would be placed in jeopardy.

On May 8, 2000, Mr. Lefebre responded to my Attorney's letter and stated that he "agreed with the charges and allegations made against him" by me and that McGravey would be required to write a letter of apology to me, ordered McGravey to enroll in a course which included one on one counseling about sexual harassment and hostile work environments. Despite assurances from the City of Lawrence, McGravey continued to cause me to feel sexually harassed and to work in a hostile work environment.

To date, I have never received an apology letter from McGravey and upon information and belief, I believe that McGravey did not attend such a course in sexual harassment or hostile work environments. At the City's insistence

Mr. Lefebre also indicated that he placed a letter in my file stating that the City of Lawrence determined that I had not violated the City's policies concerning e-mail/Internet access policy and that any such contacts which were made to pornographic websites or e-mails were not authorized by me.

On May 15, 2000, my then attorney Richard K. Sullivan, responded to Mr. Lefebre's letter in which Mr. Lefebre indicated that the matter was closed based on the fact that I felt that I could work with mcGravey without worrying about a continued hostile work environment, which was completely false. Mr. Sullivan indicated to Mr. Lefebre that this matter was not closed, but rather, only that McGravey's behavior may change temporarily. Unfortunately, this behavior did not change.

Shortly after this, McGravey began an extramarital affair which the entire office was privy to. This affair lasted until McGravey's father's death in 2002. During this time, McGravey would state how sexually liberal his mistress was, how they would shop at sex stores together, and would frequently ask for my and others opinions on Internet purchases he was contemplating for her and his wife at the same time.

McGravey would frequently ask me how much I made a week. He would then say how much he was paying his mistress a week and imply that I too could have such a deal with him. That I could be sitting home making more money, tax free. There was another woman in the office about whom McGravey would ask me whether I thought she would be interested in making that kind of money.

3

These comments continued until the time of his of resignation on or about July 12, 2004.

On or about June 14, 2004, McGravey showed two women co-workers sexually graphic, naked photographs of him and a woman named "Leslie", who was allegedly his mistress. I am the immediate supervisor of one of these women. McGravey had showed this employee the pictures of himself on a computer in our office while I was at lunch. Upon my return, her first words to me were, "don't ever leave me alone with him again".

Several days later, McGravey told me about the sexual pictures that his "ex-mistress" had placed on a website called "Show My Wife.com.", but he couldn't show the pictures to me because the web server had replaced the pictures with new ones.

At that time, I contacted my former attorney Richard K. Sullivan. Upon his advice, I informed the Mayor of the City of Lawrence, Michael J. Sullivan, of McGravey's actions. During the Mayor's two (2) week investigation arising from my complaints about McGravey, the Mayor's office allowed me to take a paid leave of absence, as I was unable to work because of the anxiety I was suffering from as a result of my fear of retaliation by McGravey. McGravey continued to harass me during my period of leave, by attempting to have me terminated for abandonment of my position, which was reported to me by the Acting Personnel Director, Elie Bernabel.

As a result of these actions by McGravey, which have created an extremely hostile work environment, I have been subject to gross sexual harassment. McGravey's actions and the City of Lawrence's refusal to address these actions by McGravey have caused me to suffer greatly, both physically and emotionally. McGravey has always had a volatile temper. He would become enraged without provocation, scream, and throw things such as computers. He intimidated me by telling me "he does not wound those that cross him, he kills".

I have experienced weight loss, loss of appetite, and headaches as a result of the fear and anxiety which I suffer from at work. McGravey's actions and the City's lack of remedial action have also caused me to seek treatment for the emotional trauma that I have suffered.

Since my recent complaints were addressed by my attorney, Richard C. Bardi, I have been the subject of a hostile work environment created by City Council President Patrick Blanchette. I feel as if my complaints and disclosure of McGravey's violation of the City's Internet policy have resulted in others turning against me and causing me to work under difficult situations and in a hostile work environment.

McGravey resigned on or about July 12, 2004. That evening I received a phone call from Blanchette informing me of McGravey's resignation at that the City Council had decided that under the circumstances they felt it was better to not name me "Acting City Clerk", as would be common practice, because it might appear that I had reported McGravey's actions as a way to be promoted to his job. In later conversations with

Councilors, all denied any knowledge of this and stated that President Blanchette had made that decision on his own.

Council President Blanchette was considered my supervisor after McGravey's resignation. The day I returned to work, July 19, 2004, I was made aware that Blanchette continued to communicate with McGravey through e-mails after McGravey's resignation. When I asked Blanchette if he had any contact with McGravey he responded that he had not had any communication with McGravey except for McGravey's faxed resignation. Blanchette informed me that he was setting up a committee to bring the process of appointing a new City Clerk. At that time, I informed Blanchette that the committee must hold public hearings and keep minutes of the meetings. He became very annoyed with me and the discussion ended. The following night's meeting, Blanchette continually referred to me as "Madame Assistant Clerk". Throughout my years performing this duty with Blanchette he had always referred to me as "Madame Clerk". On July 26, 2004, I again asked Blanchette if he had been in communication with McGravey. At this time, he changed his earlier statement to me and said that he had received one e-mail from McGravey.

On July 27, 2004, at a City Council meeting, I was again informed Blanchette of the proper procedure regarding the Open Meeting Law requirements for the Ad Hoc Committee he had created in order to process applications for the City Clerk's position. He became greatly annoyed at me and informed other Councilors that I had concerns with the process.

On July 30, 2004, I informed Blanchette that I would like the Council to name me "Acting City Clerk". Blanchette asked me to file a grievance process with my union so that he could explain this to his fellow Councilors. I stated that I would rather have him present my request to the councilors.

Throughout the month of August, I spoke with several Councilors who all denied any knowledge of my request to be appointed Acting Clerk.

On or about August 19, 2004 I was told by City Councilor Israel Reyes that my office would be "toured" by City Councilors and that my staff would be interviewed regarding the operations of the office. Reyes informed me that I could not be present as this was a "conflict". Reyes stated that he had been ordered to make these arrangements by Blanchette during the Ad Hoc meeting.

On August 19, 2004, Blanchette came to see me in my office because he felt I was trying to "cause waves" with the process of appointing a new clerk. I stated that I certainly would not want to annoy those responsible for a position I was interested in, rather it was my job to insure that the Council is informed of the proper process. I told Blanchette that I felt that he had been increasing hostile towards me since McGravey's resignation. Throughout the entire months of July and August, Blanchette repeatedly expressed his sympathies for McGravey to me. I stated I was very uncomfortable with the fact that he had lied to me about his continued communication with McGravey. He first

5

denied contacting McGravey, then later said he had not been in contact with McGravey when I last asked, just since then. My conversation with Blanchette resulted in my being ordered out of work by my physician for several weeks.

On September 15, 2004 the Personnel Committee, a sub-committee of the City Council arranged for four candidates for the City Clerk's position to be interviewed in Executive Session, but I was not so advised before my arrival for my interview. During my interview, two Councilors were openly hostile to me, Councilors Blanchette and Gilbert Frechette. Prior to the beginning of the interview I was informed that the executive session had nothing to do with the McGravey situation and that all candidates would be asked the same questions. At one point, Frechette questioned my being under doctor's care during the summer months.

On September 18, 2004, I received a letter from the Blanchette informing me that I had not been chosen for the position of City Clerk. Blanchette is not a member of the personnel committee, and the process is not actually complete until the full council chooses a candidate by a majority vote. This did not take place until September 21, 2004.

On December 2, 2004, Lawrence P. Lefebre, former Personnel Director of the City of Lawrence and former Mayor for the City of Lawrence, entered my office uninvited, stood before my desk and verbally attacked me regarding my complaint against the City. He was yelling that "[I] would not get any money out of [him]" that "[I] didn't get the job for other reasons" and that "[he] have all the documents". I was extremely frightened and felt completely trapped as he had me in a corner of the office. Upon my repeated requests for him to leave, he finally did. This incident resulted in my being admitted to the hospital form chest pains and I have been ordered by my physician to not return to work.

6