# CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP

COUNSELORS AT LAW

Ten Post Office Square, Boston, Massachusetts 02109

Tel: (617) 482-8200

Fax: (617) 482-6444

THOMAS E. PEISCH
BOB B. ROSENTHAL
JAMES F. KAVANAUGH, JR.
RUSSELL F. CONN
GEORGE M. FORD
JAMES B. PELOQUIN
BARRY E. GOLD
THOMAS J. GALLITANO
NEIL R. SCHAUER
JAMES GRAY WAGNER
ERIN K. HIGGINS
STEVEN E. GURDIN
MICHAEL T. SULLIVAN
CONSTANCE M. MCGRANE
KURT B. FLIEGAUF

RONALD M. JACOBS
CAROL A. STARKEY
SARA L. GOODMAN
ELISE S. WALD
MICHAEL R. BERNARDO
JACOB A. LABOVITZ
CARA A. FAUCI
JOHANNA L. MATLOFF
AMY C. STEWART
BETH NUZZO NEWMARK
SARAH E. WEBER
VALERIE CHRISTOPHILOS
MAYA L. SETHI

WRITER'S DIRECT DIAL: 617-348-8297
E-MAIL: MBERNARDO@CKRPF.COM

April 21, 2006

United States District Court
 For the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Attention: Docket Clerk -- Judge Wolf, Room 5110

    RE: <u>Jennifer Padellaro v. James A. McGravey and City of Lawrence</u>

Dear Sir/Madam:

    Enclosed please find Exhibit A and Exhibit B to Defendant James McGravey's Opposition to Motion For Leave of Court to Amend Plaintiff's Complaint which were inadvertently omitted from the Opposition at the time it was electronically filed with the Court on April 19, 2006.

    Thank you.

Very truly yours,

Michael R. Bernardo

MRB/lm: 5242-000
Enclosure
cc:   Thomas E. Peisch, Esq.
      Kevin G. Powers, Esq.
      James W. Bucking, Esq.
      Mr. James A. McGravey

252255.1

# EXHIBIT A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | |
|---|---|
| ☐ FEPA | |
| ☐ EEOC | CHARGE NUMBER |

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Jennifer Padellaro | (978) 682-7089 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 7 South Bowdoin Street, Lawrence, Massachusetts 01843 | | 1/25/63 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| City of Lawrence | 100+ employees | (978) 794-5803 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 200 Common Street, Lawrence, Massachusetts 01843 | | Essex |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| James A. McGravey | unknown |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 14 Mount Vernon Circle, Lawrence, Massachusetts 01843 | | Essex |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ AGE
☐ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☒ OTHER (Specify)
(Sexual Harrassment & Hostile Work Environment)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (ALL)
April 1996 to July 12, 2004 and continuing.
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

* See Attachment *

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their proceedures.

NOTARY (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I delcare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

Date   Charging Party (Signature)

EEOC FORM 5 (Test 10/94)

000501

## ATTACHMENT TO CHARGE OF DISCRIMINATION

Complainant:   Jennifer Padellaro

Respondent:   City of Lawrence, Massachusetts and
James McGravey, Former City Clerk, City of Lawrence, Massachusetts

In or about July 1987, I began working in the City of Lawrence Clerk's office under Charles Nyhan. James McGravey (hereinafter "McGravey") was the Assistant City Clerk. McGravey was appointed City Clerk in or about 1989 and I was appointed Assistant City Clerk in August of 1993.

In or about April of 1996, I spent my lunch hour in the City Council's Office. Commonly, I would eat with several of the female employees. During this time, McGravey would join our group for lunch. However, it was extremely bothersome to our group, as McGravey would repeatedly tell stories of a graphic explicit sexual nature. During this time, McGravey's wife, Carol Hajjar McGravey, the City Attorney for the City of Lawrence, would occasionally join our group for lunch. During these times, McGravey would act civilly and would not inject his normal crass, offensive and sexually explicit stories into our conversations. Eventually, all the women stopped going to lunch in the City Council Office, in fear that McGravey would continue to show up and harass us.

In or about 1998, McGravey began to visit X-rated websites on the Internet. In particular, McGravey visited a site called "Flash Mountain", which posted pictures of women who would "flash" the camera, exposing their bare breasts, on the Splash Mountain ride at Disney World. McGravey stated that he believed that one of the women "flashing" looked like me. He commented how he liked "my breasts" and began showing the site to employees in the office. The next morning McGravey came into the office with a copy of the picture he had printed off his computer at home and after he finished showing the picture around he gave it to me and told me to go home and show my mother. In October of 1999, my brother, Gary, visited me in the office. During a conversation with my brother, McGravey asked him if he had the Internet at home. When he responded "yes" McGravey told him he should visit the web site "Flash Mountain" to see the photograph of myself, which McGravey believed to me although it was not, topless.

By late 1998 and early 1999, I began to notice increased use of the Internet by McGravey, in particular, on pornographic, sexually explicit, X-rated web sites that had naked males and females performing sexual acts. At or about this time, I was working with a female co-worker when the web site "Whitehouse", a pornographic website, popped up on my computer. When the co-worker stated "what the heck is that" McGravey came over to my desk and said, "Jenn, where have you been?" He denied that it was his doing, but this was a site he had mentioned many times. It was obvious to me that he was using my computer to view pornographic websites in an attempt to make it appear as if I had logged on to the computer and accessed the websites myself.

000502

By May of 1999, I was so concerned with McGravey using my computer to visit pornographic sites that I made an appointment with an Assistant City Attorney regarding the matter. At this time, McGravey's wife was the City Attorney, their very good friend was the sitting Mayor and there was no Personnel Director. I informed the Assistant City Attorney that McGravey was using my computer to undertake such activities. I explained that I was reporting this to him in an attempt to protect myself, as I was fearful that such activities would be blamed on me. The Assistant City Attorney agreed to keep the issue private, as I was fearful of disrupting the office and/or being terminated from my position.

At this time, I asked the MIS Director to remove all Internet access from my computer so that I would not have to be constantly fearful that such websites were being accessed from my computer. The MIS Director denied my request to remove the Internet from my computer. However, he agreed to give me a password. Upon installing the password, the MIS Director stated "Jimmy has quite the little porno problem". As a result of McGravey's actions, I was being sexually harassed and humiliated. Without my knowledge or approval, the MIS Director gave McGravey my password. When I questioned him why he would release the password to McGravey he stated "Jim's the boss". When I asked him for a private password, he refused.

In the fall of 1999, I became aware that McGravey was contacting "call girls" and "escort services" under my e-mail address and my name. McGravey was also visiting websites such as "daddy's little girls" and the "Best F... Transsexuals On The Net". At or about this time, I was informed by a co-worker that McGravey was showing employees a picture on the Internet of a "well endowed" man. This co-worker advised me of such to warn me of McGravey's intention to show me the picture. It was common for the women in the office to do so.

In or about March 2000, a memorandum was issued by the Personnel Department, which repeated that each employee was informed of the City's policy regarding e-mail use and use of the Internet and that anyone found to violate these policies could be reprimanded up to termination. This memorandum required each employee sign at the bottom acknowledging he/she read and understood the policy. I refused to sign this policy, along with a number of other women in the office, as I was fearful that I would be subject to discipline as a result of McGravey's actions on my computer. I was aware that McGravey was constantly on my computer visiting such websites, which I felt would be wrongfully attributed to me. Despite my complaints to McGravey, he would continue to use my password, which as explained earlier, he obtained from the City of Lawrence, over my objection, to access filthy, explicit and gross sexual images.

McGravey continued his conduct of making inappropriate sexual remarks and viewing pornographic images after he signed the City's policy in March of 2000.

The Personnel Director at this time was Lawrence P. Lefebre. Mr. Lefebre was a former Mayor of the City of Lawrence, Massachusetts. McGravey had been employed as

Mayor Lefebre's Mayoral Aide in the late 1970's into the early 1980's and Mayor Lefebre appointed McGravey as the Assistant City Clerk in or about 1983.

It was at this time that I contacted Attorney Richard K. Sullivan.

On April 12, 2000, my then Attorney Richard K. Sullivan, sent a letter to Lawrence P. Lefebre, Personnel Director for the City of Lawrence, in which he detailed the actions of McGravey, which included visiting pornographic websites from my computer, as well as arranging for meetings with "call girls" and "escort services". I was losing sleep over this and I felt intimidated at work. However, I felt that I could not complain anymore than I did, as my job would be placed in jeopardy.

On May 8, 2000, Mr. Lefebre responded to my Attorney's letter and stated that he "agreed with the charges and allegations made against him" by me and that McGravey would be required to write a letter of apology to me, ordered McGravey to enroll in a course which included one on one counseling about sexual harassment and hostile work environments. Despite assurances from the City of Lawrence, McGravey continued to cause me to feel sexually harassed and to work in a hostile work environment.

To date, I have never received an apology letter from McGravey and upon information and belief, I believe that McGravey did not attend such a course in sexual harassment or hostile work environments. At the City's insistence

Mr. Lefebre also indicated that he placed a letter in my file stating that the City of Lawrence determined that I had not violated the City's policies concerning e-mail/Internet access policy and that any such contacts which were made to pornographic websites or e-mails were not authorized by me.

On May 15, 2000, my then attorney Richard K. Sullivan, responded to Mr. Lefebre's letter in which Mr. Lefebre indicated that the matter was closed based on the fact that I felt that I could work with mcGravey without worrying about a continued hostile work environment, which was completely false. Mr. Sullivan indicated to Mr. Lefebre that this matter was _not closed,_ but rather, only that McGravey's behavior may change temporarily. Unfortunately, this behavior did not change.

Shortly after this, McGravey began an extramarital affair which the entire office was privy to. This affair lasted until McGravey's father's death in 2002. During this time, McGravey would state how sexually liberal his mistress was, how they would shop at sex stores together, and would frequently ask for my and others opinions on Internet purchases he was contemplating for her and his wife at the same time.

McGravey would frequently ask me how much I made a week. He would then say how much he was paying his mistress a week and imply that I too could have such a deal with him. That I could be sitting home making more money, tax free. There was another woman in the office about whom McGravey would ask me whether I thought she would be interested in making that kind of money.

3

These comments continued until the time of his of resignation on or about July 12, 2004.

On or about June 14, 2004, McGravey showed two women co-workers sexually graphic, naked photographs of him and a woman named "Leslie", who was allegedly his mistress. I am the immediate supervisor of one of these women. McGravey had showed this employee the pictures of himself on a computer in our office while I was at lunch. Upon my return, her first words to me were, "don't ever leave me alone with him again".

Several days later, McGravey told me about the sexual pictures that his "ex-mistress" had placed on a website called "Show My Wife.com.", but he couldn't show the pictures to me because the web server had replaced the pictures with new ones.

At that time, I contacted my former attorney Richard K. Sullivan. Upon his advice, I informed the Mayor of the City of Lawrence, Michael J. Sullivan, of McGravey's actions. During the Mayor's two (2) week investigation arising from my complaints about McGravey, the Mayor's office allowed me to take a paid leave of absence, as I was unable to work because of the anxiety I was suffering from as a result of my fear of retaliation by McGravey. McGravey continued to harass me during my period of leave, by attempting to have me terminated for abandonment of my position, which was reported to me by the Acting Personnel Director, Elie Bernabel.

As a result of these actions by McGravey, which have created an extremely hostile work environment, I have been subject to gross sexual harassment. McGravey's actions and the City of Lawrence's refusal to address these actions by McGravey have caused me to suffer greatly, both physically and emotionally. McGravey has always had a volatile temper. He would become enraged without provocation, scream, and throw things such as computers. He intimidated me by telling me "he does not wound those that cross him, he kills".

I have experienced weight loss, loss of appetite, and headaches as a result of the fear and anxiety which I suffer from at work. McGravey's actions and the City's lack of remedial action have also caused me to seek treatment for the emotional trauma that I have suffered.

Since my recent complaints were addressed by my attorney, Richard C. Bardi, I have been the subject of a hostile work environment created by City Council President Patrick Blanchette. I feel as if my complaints and disclosure of McGravey's violation of the City's Internet policy have resulted in others turning against me and causing me to work under difficult situations and in a hostile work environment.

McGravey resigned on or about July 12, 2004. That evening I received a phone call from Blanchette informing me of McGravey's resignation at that the City Council had decided that under the circumstances they felt it was better to not name me "Acting City Clerk", as would be common practice, because it might appear that I had reported McGravey's actions as a way to be promoted to his job. In later conversations with

Councilors, all denied any knowledge of this and stated that President Blanchette had made that decision on his own.

Council President Blanchette was considered my supervisor after McGravey's resignation. The day I returned to work, July 19, 2004, I was made aware that Blanchette continued to communicate with McGravey through e-mails after McGravey's resignation. When I asked Blanchette if he had any contact with McGravey he responded that he had not had any communication with McGravey except for McGravey's faxed resignation. Blanchette informed me that he was setting up a committee to bring the process of appointing a new City Clerk. At that time, I informed Blanchette that the committee must hold public hearings and keep minutes of the meetings. He became very annoyed with me and the discussion ended. The following night's meeting, Blanchette continually referred to me as "Madame Assistant Clerk". Throughout my years performing this duty with Blanchette he had always referred to me as "Madame Clerk". On July 26, 2004, I again asked Blanchette if he had been in communication with McGravey. At this time, he changed his earlier statement to me and said that he had received one e-mail from McGravey.

On July 27, 2004, at a City Council meeting, I was again informed Blanchette of the proper procedure regarding the Open Meeting Law requirements for the Ad Hoc Committee he had created in order to process applications for the City Clerk's position. He became greatly annoyed at me and informed other Councilors that I had concerns with the process.

On July 30, 2004, I informed Blanchette that I would like the Council to name me "Acting City Clerk". Blanchette asked me to file a grievance process with my union so that he could explain this to his fellow Councilors. I stated that I would rather have him present my request to the councilors.

Throughout the month of August, I spoke with several Councilors who all denied any knowledge of my request to be appointed Acting Clerk.

On or about August 19, 2004 I was told by City Councilor Israel Reyes that my office would be "toured" by City Councilors and that my staff would be interviewed regarding the operations of the office. Reyes informed me that I could not be present as this was a "conflict". Reyes stated that he had been ordered to make these arrangements by Blanchette during the Ad Hoc meeting.

On August 19, 2004, Blanchette came to see me in my office because he felt I was trying to "cause waves" with the process of appointing a new clerk. I stated that I certainly would not want to annoy those responsible for a position I was interested in, rather it was my job to insure that the Council is informed of the proper process. I told Blanchette that I felt that he had been increasing hostile towards me since McGravey's resignation. Throughout the entire months of July and August, Blanchette repeatedly expressed his sympathies for McGravey to me. I stated I was very uncomfortable with the fact that he had lied to me about his continued communication with McGravey. He first

denied contacting McGravey, then later said he had not been in contact with McGravey when I last asked, just since then. My conversation with Blanchette resulted in my being ordered out of work by my physician for several weeks.

On September 15, 2004 the Personnel Committee, a sub-committee of the City Council arranged for four candidates for the City Clerk's position to be interviewed in Executive Session, but I was not so advised before my arrival for my interview. During my interview, two Councilors were openly hostile to me, Councilors Blanchette and Gilbert Frechette. Prior to the beginning of the interview I was informed that the executive session had nothing to do with the McGravey situation and that all candidates would be asked the same questions. At one point, Frechette questioned my being under doctor's care during the summer months.

On September 18, 2004, I received a letter from the Blanchette informing me that I had not been chosen for the position of City Clerk. Blanchette is not a member of the personnel committee, and the process is not actually complete until the full council chooses a candidate by a majority vote. This did not take place until September 21, 2004.

On December 2, 2004, Lawrence P. Lefebre, former Personnel Director of the City of Lawrence and former Mayor for the City of Lawrence, entered my office uninvited, stood before my desk and verbally attacked me regarding my complaint against the City. He was yelling that "[I] would not get any money out of [him]" that "[I] didn't get the job for other reasons" and that "[he] have all the documents". I was extremely frightened and felt completely trapped as he had me in a corner of the office. Upon my repeated requests for him to leave, he finally did. This incident resulted in my being admitted to the hospital form chest pains and I have been ordered by my physician to not return to work.

# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

MCAD DOCKET No.: 04BEM03404
EEOC/HUD Federal Charge No.: 16CA500488

JENNIFER PADELLARO,
    Petitioner,

v.

CITY OF LAWRENCE and
JAMES MCGRAVEY,
    Respondents,

RECEIVED
MAR 2 1 2005
COMMISSION AGAINST
DISCRIMINATION

## PETITIONER'S REBUTTAL TO RESPONDENTS, JAMES McGRAVEY AND THE CITY OF LAWRENCE'S, POSITION PAPERS

NOW COMES the Petitioner, Jennifer Padellaro, and respectfully submits the following REBUTTAL to the Respondents, James McGravey and the City of Lawrence's, Position Statements, in accordance with this Honorable Commission's letter dated March 1, 2005, for their consideration in making its determination.

Prior to its amended on August 7, 2002, which became effective on November 5, 2002, M.G.L.A. c. 151B, § 5 provided that sexual harassment claims were to be brought within six (6) months of the occurrence of the alleged discriminatory event. The purpose of this requirement, and therefore presumably the purpose of the current three hundred (300) day requirement, is to (1) provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination; and (2) to provide notice to the defendant of potential liability. *Carter v. Commissioner of Correction*, 43 Mass.App.Ct. 212, 217 (1997).

An MCAD regulation interpreting the former six (6) month statute, however, provided that the limitation will not apply when "the unlawful conduct complained of is of a continuing

nature", presuming that this interpretation can carry over to the new three (300) hundred day requirement. 804 Code Mass.Regs §1.03(2) (1993). As such, all interpretations and examinations of the former statute of limitations should be applied to the current three hundred (300) day requirement.

Both the Massachusetts Supreme Judicial Court and the Massachusetts Court of Appeals have relied on the continuing violation doctrine to permit Plaintiffs to seek damages, if the alleged events are part of an ongoing pattern of discrimination, and there is a discrete violation within the six (6) month limitation period to anchor earlier claims. "This exception recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact." _Cuddyer v. The Stop & Shop Supermarket Company_, 434 Mass. 521 (2001). "Where there is a determination of a continuing violation within the statutory limitations period, a Complaint filed with the MCAD is timely filed even though some, or a large portion, of the discriminatory conduct may have taken place more than six (6) months prior to the complaint." _Id_.

In order to recover on this continuing violation theory, a Plaintiff must establish a hostile work environment. A hostile work environment is one that is "pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [which] poses a formidable barrier to the full participation of an individual in the workplace." _College-Town, Div. of Interco, Inc. v. MCAD_, 400 Mass. 156, 262 (1987). Incidents of sexual harassment serious enough to create a work environment permeated by abuse typically accumulate over time, and many incidents in isolation may not be serious enough for complaint." _Cuddyer v. The Stop & Shop Supermarket Company_, 434 Mass. 532 (2001). "When linked together, however, the seemingly

disparate incidents may show a prolonged and compelling pattern of mistreatment that force a Plaintiff to work under intolerable, sexually offensive, conditions." *Id.*

"To establish a timely hostile work environment claim of sex discrimination under G.L. c. 151B, a Plaintiff must establish that she was compelled to work in such an environment during her employment." *Id.* The Plaintiff must further show, within the limitation period, the existence of at least one (1) incident of sexual conduct, or misconduct, which, standing alone, might not necessarily support her claim, but which substantially contributes to the continuation of a hostile work environment, such that the incident anchors all related incidents, thereby making the entirety of the claim for discriminatory conduct timely. *Id.*

When the six (6) month statute of limitations was being applied and the continuing violation doctrine was not elucidated, the S.J.C. found the approach provided a strong incentive for an employee to file a complaint with the MCAD when the Complainant first suspected that he or she may have been a victim of unlawful discrimination. *Id.* 538. If the employee waits longer than six (6) months to determine whether the harassment will stop, or works with her employer to stop it, or to discover whether the harassment will deteriorate from bad to intolerable, she risks losing her ability to seek legal relief. *Id.* The SJC found that this result was neither fair to the employee who may be forced to prematurely choose litigation as a remedy, nor to the employer, who has a legitimate interest in attempting to resolve allegations of harassment short of time-consuming and expensive litigation. *Id.*

The SJC's decision in *Cuddyer v. The Stop & Shop Supermarket Company*, though based on the former six (6) month statute of limitations, reversed a lower Court's decision to grant summary judgment in favor of a Defendant, and adopted the continuing violation doctrine as a method to preserve timely action in the instance of ongoing hostile work environments.

3

000490

Presumably, this doctrine could be employed under the current three hundred (300) day statute of limitations, and could be used to combine a pattern of harassment that began in 2001 into one action in 2005.

WHEREFORE, the Petitioner, Jennifer Padellaro, respectfully submits the following Rebuttal to the Respondents, James McGravey and City of Lawrence's, Position Statement, for consideration by the Commission in making their determination.

Respectfully submitted,
Jennifer Padellaro, Petitioner,
By her Attorney,

_____
Richard C. Bardi / BBO #542797
The Law Office of Richard C. Bardi
6 Beacon Street, Suite 410
Boston, Massachusetts 02108
(617) 227-4040

Dated: March 21, 2005

**CERTIFICATE OF SERVICE**
I HEREBY CERTIFY THAT ON THIS DAY A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH PARTY BY MAIL/~~BY HAND/BY FAX~~
DATED: 3/21/05

4

000491