UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

JENNIFER PADELLARO,

      Plaintiff,

   v.

JAMES MCGRAVEY and
CITY OF LAWRENCE,

      Defendants.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CIVIL ACTION NO. 05-11788-MLW

## DEFENDANT CITY OF LAWRENCE'S OPPOSITION TO PLAINTIFF AND RICHARD SULLIVAN'S EMERGENCY MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER

### I. INTRODUCTION

Plaintiff and Richard Sullivan's Emergency Motion to Quash and Motion for Protective Order ("the Motion") is procedurally flawed and substantively vacant. As for process, Plaintiff and Sullivan allowed twenty days to pass after receiving the deposition notice at issue, then rushed to Court filing an "emergency" motion the week before the scheduled deposition without ever conferring with the City as required by the Federal Rules of Civil Procedure. The substance of the Motion fares no better. It is merely an amalgam of excerpts from treatises on the attorney-client and work-product privileges with no serious attempt to apply those generic principles to the facts of this case. Rather, Plaintiff and Sullivan suggest that the mere existence of these privileges means that the City is absolutely prohibited from deposing or obtaining documents from Sullivan. But black letter law is to the contrary; no such blanket privilege exists. Instead, it is well-settled that lawyers who are subpoenaed must appear for deposition, answer questions and produce documents - just like any other witness. If the lawyer believes that a particular

deposition question or a particular document request calls for privileged material, he may <u>then</u> assert the privilege, at which point he has the burden to prove that the privilege applies and has not been waived in each such case (assuming the proponent of the question or request persists after facing the objection, following a conference among counsel). When the discovery dispute has been perfected in this fashion, the Court can then engage in a particularized analysis of the privilege issues. None of that happened here.

Sullivan has refused to appear for deposition at all, even to answer unquestionably non-privileged questions (such as his communications with the City). Sullivan has refused to produce a single document, even those for which no privilege could arguably apply (such as his letters to the City). Sullivan and Plaintiff seek to quash the subpoena in its entirety, thereby excusing Sullivan from answering any questions or producing any documents. Finally, Sullivan and Plaintiff have taken these actions without even attempting to comply with Fed. R. Civ. P. 26(c), Fed. R. Civ. P. 45, Local Rule 7.1 or Local Rule 37.1 - thereby needlessly burdening the City and the Court with the cost and time of litigating over a dispute that is at best premature. As such, the Motion must be denied, with fees and costs being awarded to the City based on the frivolous nature of the Motion.

## II. **BACKGROUND FACTS**

Plaintiff has alleged in this case that she was subjected to a hostile work environment by her supervisor, Defendant James McGravey ("McGravey"), while she was an employee of the City. Padellaro worked for McGravey from 1987 to 2004. On April 12, 2000, Attorney Richard K. Sullivan ("Sullivan") sent a letter to the City's Personnel Director, Lawrence LeFebre ("LeFebre") indicating that he represented Padellaro and outlining Padellaro's complaints. <u>See</u> <u>Exhibit 1</u>, attached hereto. On May 8, 2000, LeFebre wrote to Sullivan outlining actions the City

was taking in response to Padellaro's concerns. McGravey was ordered to write a letter of apology to Padellaro; McGravey was ordered to attend sexual harassment counseling through the Employee Assistance Program; a letter of discipline was placed in McGravey's personnel file; McGravey was warned to avoid any form of retaliation against Padellaro; McGravey was told in no uncertain terms that any recurrence of his behavior would result in immediate discharge; and a letter was placed in Padellaro's file indicating that "at no time has the City found she has violated the City's policies concerning 'E-Mail or Internet Access,'" pursuant to her request. See Exhibit 2, attached hereto.

Sullivan sent the City a second letter on May 15, 2000, indicating that he received LeFebre's May 8 letter and acknowledging the City's steps to resolve the issue. See Exhibit 3, attached hereto. Sullivan advised the City that he would be checking in with Padellaro periodically to ensure that her problems with McGravey had been permanently resolved. Id. LeFebre then responded to Sullivan in a letter dated May 26, 2000, assuring Sullivan that he would also continue to monitor the situation. See Exhibit 4, attached hereto.

Sullivan did not contact the City again for more than four years, during which time no additional incidents between Padellaro and McGravey were reported to or otherwise observed by the City. This despite the situation being actively monitored by Sullivan on behalf of Padellaro, and by LeFebre on behalf of the City.

By letter dated June 29, 2004, Sullivan informed the City of new allegations which he described as having occurred "recently." See Exhibit 5, attached hereto. Sullivan did not assert that any misconduct had occurred in the period between the spring of 2000 and the summer of 2004. On the contrary, after describing with some specificity the original incidents and the

correspondence concerning same, Sullivan stated: "Unfortunately, **recently**, McGravey has reverted to his prior pattern of behavior." Id. at page 2 (emphasis added).

Sullivan thereafter ceased to represent Padellaro. To the City's knowledge, Sullivan never filed a court complaint or discrimination charge on behalf of Padellaro. A new attorney, Richard C. Bardi, filed Padellaro's charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") on December 15, 2004. See Exhibit 6, attached hereto. Bardi also filed the instant Complaint. During the course of this litigation, Bardi was replaced with Attorney Kevin G. Powers, current counsel for Padellaro.

Contrary to what Sullivan said, and implied by his silence in his 2000 and 2004 letters, Padellaro claims in her Complaint that between 2000 and 2004 she continued to be constantly subjected to inappropriate behavior at the hands of McGravey. Thus, Padellaro asserts that the conduct in and before 2000, which would otherwise be untimely, is properly included in her MCAD charge and the instant Complaint as a "continuing violation."

On August 31, 2006, the City served Padellaro with the Notice of Deposition of Richard Sullivan. See Exhibit 7, attached hereto. The City served a corresponding subpoena on Sullivan on September 1, 2006. See Exhibit 8, attached hereto. Attached to the Notice and Subpoena was Exhibit A, requesting that Sullivan produce bills, invoices, correspondence, diaries, appointment logs, phone logs, phone records, calendars and memoranda regarding Jennifer Padellaro. On September 20, 2006, without once conferring with the City beforehand, Plaintiff and Sullivan filed the Emergency Motion to Quash and Motion for Protective Order.

## III. <u>ARGUMENT</u>

A.  **Sullivan's Motion to Quash and Plaintiff's Motion for Protective Order Should Be Denied Because Plaintiff and Sullivan Failed to Comply with the Federal Rules in Filing Their Motions with the Court.**

    1.  <u>Plaintiff ignored the rules.</u>

Plaintiff's Motion for a Protective Order should be denied because she ignored the multiple requirements set forth in the federal rules to confer with opposing counsel, and thereafter provide information to the Court, prior to filing her motion. Federal Rule 26(c) requires parties seeking a protective order to confer or attempt to confer with "the other affected parties in an effort to resolve the dispute without court action. . .." Local Rule 7.1 goes further, requiring that the parties actually confer prior to any motion being filed:

> *No motion shall be filed* unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue.

L. R. 7.1(A)(2) (emphasis added). Local Rule 37.1 not only imposes an obligation to confer prior to filing a motion for a protective order, it requires counsel for the moving party to arrange the conference, and further provides that every motion "*shall include* a certificate in the margin of the last page that the provisions of this rule have been complied with" (emphasis added). The reason for these requirements is clear: courts do not wish to be burdened with disputes that could be resolved, or at least narrowed, by the parties. See <u>Converse Inc. v. Reebok Int'l Ltd.</u>, 328 F.Supp.2d 166, 170 (D. Mass. 2004) (the purpose of Rule 7.1 "is to conserve judicial resources by encouraging parties to narrow the contours of disagreement before bringing their dispute to the court").

In this case, Plaintiff did none of these things - despite being represented by competent and experienced counsel who surely knows the rules. Plaintiff neither conferred nor attempted to confer with the City about the Motion, set up no conference, and included no certificate in the

Motion. Instead, Plaintiff rushed to court without ever attempting to determine whether all or some of the issues could be resolved. As a result, Plaintiff's Motion contains a host of assumptions and other speculation about the intentions of the City in seeking to take Sullivan's deposition, and questions the City <u>might</u> ask. The Motion goes on to assert generic objections to those hypothetical questions. This is precisely the kind of ill-defined, unperfected discovery dispute the rules were designed to prevent from reaching the Court. In counsel's experience, Rule 7.1 conferences almost always narrow, and usually eliminate, issues the parties thought were in dispute -- which is the purpose of the requirement. The Plaintiff's failure to adhere to these simple rules in this case has caused the City to incur significant expenses in responding to this frivolous Motion, warranting a denial of the Motion and the issuance of sanctions. <u>See</u> <u>Converse Inc. v. Reebok Int'l Ltd.</u>, *supra,* (imposing $15,000 in sanctions for violating Rule 7.1); <u>U.S. v. Kouri-Perez</u>, 8 F.Supp.2d 133, 139-40 (D.P.R. 1998) (counsel's failure to confer as required by Fed. R. Civ. P. 26(c) constituted evidence of "bad faith" and formed part of basis for issuing sanctions).

Moreover, Plaintiff failed to comply with Local Rule 37.1, which provides that the memorandum accompanying the Motion "shall state with particularity" certain basic information for the Court. Thus Plaintiff was required, and failed, to inform the Court: (1) whether a discovery conference was held and, if not, why; (2) the nature of the facts relevant to the matters at issue; (3) each discovery matter, such as deposition questions and interrogatories, that are at issue and Plaintiff's response; and, (4) Plaintiff's position as to "each contested issue," with supporting legal authority. <u>See</u> Rule 37.1(B). Plaintiff chose to ignore these requirements, just as she ignored Rule 7.1 and Rule 26(c). This is another basis for sanctions.

2.     <u>Sullivan ignored the rules</u>.

Like Plaintiff, Sullivan also chose to ignore the basic requirements in the federal rules prior to filing his Motion to Quash. As an initial matter, Sullivan failed to object to the subpoena in writing within fourteen days after service as required by Rule 45(c)(2)(B). The subpoena was served on Sullivan on September 1, 2006. <u>See</u> <u>Exhibit 8</u>. Fourteen days from September 1st came and went without any written objections having been served. Yet now, twenty days later, Sullivan seeks to have the subpoena quashed. This comes too late. <u>See</u> <u>Universal City Dev. Ptnrs., Ltd. v. Ride & Show Eng'g, Inc.</u>, 230 F.R.D. 688, 697 (M.D. Fla. 2005) (objections to subpoena deemed waived where not timely raised); <u>Creative Gifts, Inc. v. UFO</u>, 183 F.R.D. 568, 570 (D.N.M. 1998) (same); <u>In re Application of Sumar</u>, 123 F.R.D. 467, 472 (S.D.N.Y. 1988) (same).

Because Sullivan failed to object at all, naturally he did not adhere to the requirement in Rule 45(d)(2) to couple his assertion of privilege with "a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Thus, the City and the Court are left to guess at what documents Sullivan might have and how the attorney-client and work-product privileges might apply to such hypothetical documents. Perhaps this explains why Sullivan barely gets beyond generic hornbook citations in his papers, because the absence of meaningful document descriptions renders any more specific analysis impossible. For this reason too, the Motion should be denied.

Sullivan also failed to comply with Local Rule 7.1. Like Plaintiff, Sullivan never contacted the City to confer prior to filing the Motion to seek to narrow the issues raised or to otherwise explore whether an agreement could be reached on the scope of the deposition and documents that needed to be produced. Instead, Sullivan made the same assumptions Plaintiff

made about the City's intentions with respect to the scope of questioning and the documents it was seeking without first picking up the phone and having a conversation. Sullivan's failure to confer with the City has needlessly resulted in significant time and expense on the part of the City and the Court in addressing this Motion. Rule 7.1 is mandatory: no motion may be filed without conferring with opposing counsel. Accordingly, the Motion should be denied.

**B.    The Motion Should Be Denied and Sanctions Issued Because Its Substance is Frivolous.**

Nowhere in their papers do Plaintiff or Sullivan cite a case saying that the attorney-client privilege or work-product rule bars deposing a former attorney. In fact, it is well-settled that an attorney-client relationship does not act as a bar to discovery. See Carey v. Textron Inc., 224 F.R.D. 530, 531 (D. Mass. 2004) (plaintiff's motion for protective order to prevent the deposition of his former attorney denied). Rather, the attorney must submit to deposition and then assert privilege as to particular communications. See Winchester Capital Mgmt. Co., Inc. v. Mfrs. Hanover Trust Co., 144 F.R.D. 170, 174 (D. Mass. 1992).

In Carey, the Court specifically rejected the argument that the mere presence of an attorney-client relationship protected "any and all information" the attorney held. According to the Court, "[p]lainly, the privilege does not apply to 'all information' that . . . [the attorney] . . . has concerning the matter." Id. Instead, the privilege applies to "*communications* made between a lawyer and client for purpose of obtaining legal advice" (emphasis in original). Id. The Court did not delve deeply into the issue of the appropriate application of the work-product doctrine to the deposition of an attorney, because the deposition was permissible "under any reasonable standard." Id. at 531. As in the instant case, the Carey court noted that since the

- 8 -

attorney was no longer representing the plaintiff, any concern over possible interference in the case occasioned by his deposition was not substantial. Id.

Indeed, in Winchester Capital Mgmt., the Court granted a motion to compel testimony of plaintiff's current attorneys, finding the subjects not to be privileged. In reaching its decision, the Court noted the "unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality." Winchester Capital Mgmt., supra, 144 F.R.D. at 174. The burden is on the proponent of the privilege, here Plaintiff and Sullivan, to prove that the privilege applies to each document withheld and each question unanswered. Id. at 173.

Plaintiff and Sullivan make no effort to address how they can assert a blanket rule precluding the deposition of a former attorney yet still meet their burden associated with asserting the privilege. In fact, they cannot meet that burden because a basic application of the required elements assumes a knowledge of the specific document or statement that the privilege concerns. See, e.g., Town of Norfolk v. U.S. Army Corps of Eng'rs, 968 F.2d 1438, 1457 (1st Cir. 1992) (person claiming the privilege carries the burden of proving: (1) an attorney-client relationship; (2) that the attorney acted as attorney in connection with the document; (3) the document relates to facts communicated for the purpose of obtaining a legal opinion or legal services; and (4) the privilege has not been waived). Plaintiff and Sullivan engage in no such analysis because they make the broad assertion that everything Sullivan saw, heard or touched is privileged and, therefore, are unable to meet their burden before the Court because their Motion contains no discussion of how or why the privilege should be applied. Compare City of Springfield v. Rexnard Corp., 196 F.R.D. 7 (D. Mass 2000) (in which the Court considered different documents/communications separately to determine whether or not each one was privileged); Winchester Capital Mgmt., supra, 144 F.R.D. 170 (same). Thus, the settled case law

definitively rejects the broad, sweeping theory Plaintiff and Sullivan assert in their papers: that the mere fact that Sullivan was Padellaro's attorney bars his deposition and excuses him from producing documents in his possession.

In fact, courts have long recognized numerous categories of documents and areas of inquiry that are not shielded from discovery by the attorney-client privilege. See, e.g., Savoy v. Richard A. Carrier Trucking, Inc., 178 F.R.D. 346, 350 (D. Mass. 1998) ("the 'structural framework' surrounding the substance of the communications is discoverable. Accordingly, the fact of the attorney-client relationship and the dates on which services were performed are not necessarily privileged") (internal citations omitted); Universal City Dev. Ptnrs., Ltd., *supra,* 230 F.R.D. at 173 ("It is generally recognized that the communication of factual information is not protected by the attorney-client privilege"); In re Grand Jury Subpoenas (Zerendow), 925 F.Supp. 849, 855 (D. Mass. 1995), *citing* In re Grand Jury Subpoenas (Anderson), 906 F.2d 1485, 1488 (10th Cir. 1990) ("It is well recognized in every circuit ... that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege"); Colonial Gas Co. v. Aetna Cas. & Sur. Co., 144 F.R.D. 600, 607 (D.Mass 1992) (documents regarding the payment of fees, billing and the time expended generally are not subject to the attorney-client privilege); see also 6-26 Moore's Federal Practice - Civil § 26.49 ("the factual circumstances surrounding the attorney-client relationship itself are discoverable. Thus, privilege does not extend to the fact of consultation, or to the identity of the client or the attorney") (internal citations omitted).

Even the substance of communications between the attorney and the client are not *necessarily* privileged. Only if the communications are "made between a lawyer and client for purpose of obtaining legal advice" does the privilege apply. Carey v. Textron, Inc., *supra,* 224

F.R.D. at 531. Thus, for example, where discussions with an attorney are properly characterized as seeking and/or giving business advice rather than legal advice, there is no privilege and the attorney can be compelled to testify concerning their content. See Borase v. M/A COM, Inc., 171 F.R.D. 10 (D. Mass. 1997). Likewise, where an attorney acts as someone's spokesman or representative with another party, communications with the attorney relating to the attorney's discussions and interactions with the other party are not privileged. See Winchester Capital Mgmt. Co., Inc., supra, 144 F.R.D. 170. In each of these instances, the full range of surrounding facts and circumstances must be analyzed with specificity to determine whether a particular question or document request is objectionable on the grounds that it calls for privileged information. A blanket, preemptive protective order -- as Plaintiff and Sullivan seek -- is not appropriate.

The range of areas of possible inquiry is no less limited by the attorney-client privilege or work-product rule in this case. As an obvious example, Sullivan communicated several times with the City's Personnel Director, Lawrence LeFebre, about alleged harassment of Plaintiff. Documents in Sullivan's possession, and any testimony he might be called to give concerning these communications, is not even arguably privileged. Likewise, documents or testimony concerning the fact of communications (as distinguished from their content) between Sullivan and Padellaro also is clearly not privileged. Here, Sullivan's May 15, 2000 letter warns LeFebre that he will be "checking with Padellaro on an ongoing basis" concerning McGravey's conduct at work. Whether Sullivan and Padellaro spoke at all, and the frequency and timing of any such communications, between that letter and Sullivan's June 2004 letter is relevant to the question of whether and to what extent any behavior continued by McGravey. Sullivan's recollection, his

memos, his diaries, invoices, calendars and other documents are thus discoverable and not privileged.

Moreover, it may well be, as the courts in <u>Borase</u> and <u>Winchester</u> determined, that even the <u>substance</u> of Padellaro's discussions with Sullivan during this time period are outside the privilege and therefore properly discoverable.  It is premature to make such a determination now, not only because Sullivan and Plaintiff failed to comply with the rules requiring consultation with opposing counsel before filing the Motion thereby eliminating any opportunity to narrow the potential issues, but also because no specific questions have been asked and objected to, and no specific documents have been identified, to allow for a proper inquiry.  The case law makes clear that these issues require a highly particularized analysis, including what role (lawyer vs. non-lawyer businessman or representative) the attorney was filling under the circumstances of the specific question or document request.  See, e.g. <u>U.S. v. Wilson</u>, 798 F.2d 509, 513 (1st Cir. 1986) (communications by a client to an attorney not acting in his role as a lawyer but as a negotiator or business advisor are not privileged); <u>City of Springfield</u>, *supra,* 196 F.R.D. at 9 (D. Mass 2000) ("lawyer may wear several other hats (e.g., business advisor, financial consultant) and because the distinctions are often hard to draw, the invocation of the attorney-client privilege may be questionable in many instances").

Finally, Plaintiff and Sullivan's proffered blanket rule is flawed because it would defeat the City's right to explore whether the privilege has been waived.  See <u>In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)</u>, 348 F.3d 16, 22 (1st Cir. 2003) ("the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived").  Even if Plaintiff and Sullivan could establish that a particular document or discussion was privileged, it would still be discoverable if the privilege

has been waived. The City must be given the opportunity to determine whether this has occurred. Plaintiff and Sullivan cannot preclude such inquiry by asserting a theory that blindly assumes the privilege has <u>not</u> been waived. Once again, the question of potential waiver demonstrates the need to conduct a specific inquiry rather than rely on a blanket rule.

As with Plaintiff and Sullivan's procedural deficiencies, the substantive issues herein are so clear and so well established that the Motion is frivolous. The City, as well as the Court, should have been spared the time and expense associated with responding to this motion. Plaintiff and Sullivan's failure to conduct even a cursory review of the relevant law, and instead simply regurgitate a hornbook discussion on the basics of the attorney-client and work-product doctrines as a basis for their motion, warrants sanctions.

## IV.  <u>CONCLUSION</u>

For all of the reasons discussed herein, Plaintiff and Sullivan's Motion should be denied, with the City being awarded its attorneys' fees and costs.

CITY OF LAWRENCE

By its attorneys:

/s/ Scott C. Merrill
James W. Bucking, BBO #558800
Scott C. Merrill, BBO #631008
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  September 27, 2006

CERTIFICATE OF SERVICE

I, Scott C. Merrill, hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 27, 2006.

_____ s/ Scott Merrill _____

RICHARD K. SULLIVAN

ATTORNEY AT LAW

300 EAST MAIN STREET

MILFORD, MASSACHUSETTS 01757

TELEPHONE (508) 482-9777

FAX (508) 482-9888

April 12, 2000
By Facsimile Transmission
and First Class Mail

Lawrence P. LeFebre
Personnel Director
City of Lawrence
City Hall - Room 302
200 Common Street
Boston, MA 01840

RE:  Jennifer F. Padellaro

Dear Mr. LeFebre:

Please be advised that the undersigned represents Jennifer F.
Padellaro (hereafter "Padellaro"), an employee of the City of
Lawrence (hereafter "City") employed in the capacity of Assistant
City Clerk.  As you know, Padellaro's immediate supervisor is the
City Clerk, James McGravey (hereafter "McGravey").

Padellaro has advised me that, for a period of time, she has been
subjected to a hostile work environment.  More specifically,
Padellaro has advised me that McGravey has utilized Padellaro's
computer at work to visit pornographic web sites, arrange for
meetings with "call girls" and "escort services," download
sexually explicit jokes, etc.   In addition, McGravey has
utilized computers of other employees in the City Clerk's office
- of which Padellaro has a clear view - to visit pornographic web
sites.  Padellaro further advised me that recently a computer in
her office displayed a screen with the words "the Best F. . .
Transsexuals On The Net."  When the screen appeared, McGravey
responded: "Oh, that shouldn't be there."  Accordingly to
Padellaro, McGravey has also shown pictures of naked women to
employees in the City Clerk's office (including Padellaro), told
"off color" jokes to those employees, made a variety of
inappropriate sexual comments, etc.  Indeed, Padellaro advised me
that recently McGravey showed a computer picture of a very well
endowed male to a female office employee.

The conduct which Padellaro has described to me is a clear
violation of the City's Work Environment Policy as well as the
provisions of Massachusetts General Laws Chapter 151B.  In

**000017**

Lawrence P. LeFebre
April 12, 2000
Page Two

addition, the conduct which Padellaro has attributed to McGravey violates the City's policies concerning "E-Mail/ or Internet access," violations of which may result in discipline, up to and including discharge.

Some time ago, Padellaro informed as Assistant City Solicitor of these problems. Nonetheless, these problems persist. Prior to filing a Charge of Discrimination with the Massachusetts Commission Against Discrimination, Padellaro wishes to afford the City one final opportunity to correct these problems. More specifically, Padellaro wants her computer secured so that McGravey cannot use it under any circumstances. Padellaro wants a written acknowledgment from the City that she has not violated the City's "E-Mail/ or Internet access" policy and that contacts made on her computer to pornographic web sites and the like were unauthorized. Padellaro wants an immediate end to the ongoing hostile work environment with which she has had to contend. Finally, Padellaro wants assurances from the City that she will not be the subject of retaliation by McGravey or anyone else.

Kindly respond to the issues raised herein at your earliest opportunity. Please direct all future communications concerning this matter to me as counsel for Padellaro.

Very truly yours,

Richard K. Sullivan

RKS:ng
cc: Jennifer F. Padellaro

000018

5-10-2000 2:02PM    FROM RICHARD K SULLIVAN 508 482 9888

Sent By: City of Lawrence;    978 794 1327;    May-8-00 2:44PM;    Page 2

*Personnel Department, City of Lawrence, Massachusetts*

*Lawrence P. LeFebre*
*Personnel Director*



*Tel. (978) 794-5828*
*(978) 794-5827*

5/8/00

Richard V. Sullivan
Attorney at Law
300 East Main Street
Milford, MA 01757

Dear Attorney Sullivan:

I am in receipt of your letter in reference to your client Jennifer F. Padellaro. I had spoken to her on a number of occasions about the situation that happened in her department and her claim that she was subject to a hostile work environment. Your client stressed to me that at no time had she ever felt pressured or intimidation for sexual favors. She said was coming forward with these charges because she did not want to be accused of using her computer to view pornographic sites. She also mentioned to me that she had gone to an assistant city solicitor in the past about these charges. She commented to me that she preferred this matter be taken care of in an informal way and that she trusted me to take the necessary steps to resolve the problem.

Jennifer asked me to wait until I receive correspondence from you before I took action. I received your fax April 12, 2000 and immediately took the following steps. I contacted your client's department head to confront him with the allegations. I reminded him that he had signed a Work Environment Policy and consequently was aware of the city's policy against hostile work environment, and he was being accused of violating that policy. I then interviewed other personnel in the city clerk's department to gather information about what they might have seen or heard. I again met with Jennifer's department head, Mr. McGravey, informing him that I agreed with the charges and allegations made against him.

I then took the following steps:

- I have ordered Mr. McGravey to write a letter of apology to your client.
- I have ordered him to be enrolled in a course offered by our EAP provider that will consist of one on one counseling about sexual harassment and what constituted a hostile work environment.
- I also stated that his subordinates have a right to work in an environment free from harassment, and the right to legal protection against retaliation for this complaint.

Mr. McGravey has been told that the information compiled from this investigation and his letter of apology to your client will be placed in his personnel file from April 30, 2000 to April 30, 2001. Your letter to me will also be included in that file.

I informed him that your client did not want to meet with him for a face-to-face apology but would accept a letter of apology from him. She expected that the treatment and hostile work environment would cease immediately, and they would be able to continue working with each other on a professional level.

200 Common Street, Room 302 • Lawrence, MA 01840 • Fax (978) 794-1327 • Llefebre@cityoflawrence.com

**000020**

5-10-2000 2:03PM    FROM RICHARD K SULLIVAN 508 482 9888                        P. 3

Sent By: City of Lawrence;                    978 794 1327;        May-8-00   2:45PM;        Page 3/4

I have taken the steps to secure your client's computer and have also complied with her wishes and had the Internet service eliminated from her workstation. I have also written a letter to Ms. Padellaro and put a letter in her file stating at no time has the City found she has violated the City's policies concerning "E-Mail/or Internet Access" and any contacts made on her computer to pornographic web sites were unauthorized by her.

Furthermore, I met with your client on additional occasions since my confrontation with her department head. I did this to ascertain if she felt comfortable about the present situation, and to ask if the hostile work environment had ceased. She has assured me that the work environment has definitely improved for the best, and that she feels comfortable with the situation.

I have also told Ms. Padellaro that I spoke to Mr. McGravey warning him against possible means of retaliation for offering this complaint. I have asked your client to contact me at any time to make me aware of any perceived retaliation from him.

Your client has indicated to me that she considers the matter closed and feels she can work in her office with Mr. McGravey without worrying about a continued hostile work environment.

Please be assured that I will be monitoring the situation in her department on an on-going basis.

Very truly yours,

Lawrence P. LeFebre

**000021**

10/19/2004 12:08    9787945799                CITYATTY                                    PAGE 05

5-17-2000 1:50PM      FROM RICHARD K SULLIVAN 508 482 9688                                      P.2

# RICHARD K. SULLIVAN
ATTORNEY AT LAW
300 EAST MAIN STREET
MILFORD, MASSACHUSETTS 01757

TELEPHONE (508) 483-9777
FAX (508) 483-0884

May 15, 2000

Lawrence P. LeFebre
Personnel Director
City of Lawrence
City Hall - Room 302
200 Common Street
Lawrence, MA  01840

RE:  Jennifer E. Padellaro

Dear Mr. LeFebre:

As you know, I represent Jennifer E. Padellaro (hereafter "Padellaro"), an employee of the City of Lawrence (hereafter "City") employed in the capacity of Assistant City Clerk.

On April 12, 2000, I wrote to you advising that Padellaro had been subjected to a hostile work environment as a result of the actions of her immediate supervisor, City Clerk James McGravey (hereafter "McGravey"). In that correspondence, I set forth specific examples of McGravey's conduct which clearly violated both the City's Work Environment Policy as well as the provisions of Massachusetts General Laws Chapter 151B. In addition, conduct attributed by Padellaro to McGravey violated the City's policies concerning "E-Mail/or Internet access."

On May 8, 2000, I received your fax letter to me of that date together with a copy of a letter from you to Padellaro, dated May 8, 2000. In your May 8, 2000 letter to me, you indicated that, after an investigation, you informed McGravey that you " . . . agreed with the charges and allegations made against him." In your May 8, 2000 letter to me, you also outlined the actions which you had taken in response to my letter of April 12, 2000. One of the actions which you took was to order " . . . Mr. McGravey to write a letter of apology to your client." Since I have never been provided with a copy of McGravey's letter of apology, I would appreciate your providing the same to me at your earliest opportunity.

On May 9, 2000, Padellaro attended counseling with the City's EAP provider, the same EAP provider to whom McGravey was sent. Padellaro believes that the potential for a conflict of interest should strongly militate against such a practice. Accordingly,

000529

5-17-2000 1:51PM    FROM RICHARD K SULLIVAN 508 482 9838    P. 3

Lawrence P. LeFebre
May 15, 2000
Page Two

should Padellaro seek EAP assistance in the future, she would
request that she be permitted to utilize another EAP provider.

Lastly, in your letter of May 8, 2000 to me, you state: "Your
client has indicated to me that she considers the matter closed
and feels she can work in her office with Mr. McGravey without
worrying about a continued hostile work environment." Padellaro
has advised me that she never made any such statement. The mere
fact that McGravey's behavior has improved temporarily does not
mean that this matter is "closed." I will be checking with
Padellaro on an ongoing basis to insure that McGravey's conduct
continues to comport with the requirements of the City's Work
Environment Policy and Massachusetts General Laws Chapter 151B.

Very truly yours,

Richard K. Sullivan

RKS:ng
cc: Jennifer E. Padellaro

000530

APR-26-05 10:12 AM  CELADON          7426038                    P.02

### *Personnel Department, City of Lawrence, Massachusetts*

*Lawrence P. LeFebre*
*Personnel Director*



Tel. (978) 794-5828
(978) 794-5827

May 26, 2000


RECEIVED
MAY 3 0 2000

Richard K. Sullivan
Attorney At Law
300 East Main Street
Milford, Massachusetts 01757

Dear Attorney Sullivan,

I am in receipt of your letter regarding Jennifer E. Padellaro. I apologize for the delay in responding to you. My schedule has been demanding, my clerk has been transferred to another department and my office has been attempting to respond to a backlog of work.

Enclosed please find a copy of the letter of apology that you referred to. Frankly, the letter should have been included in my last correspondence to you. I did offer your client an opportunity to read the letter of apology, but she decided against it.

As I stated in my letter, and in discussion with your client, I will be monitoring the situation in the City Clerks department on an on-going basis to insure that this matter does not occur again.

I too do not consider the matter closed because of a brief period of improved behavior by Ms. Padellaro. Mr. McGravey has been told in clear and strong terms that the City intends to demand compliance with the requirements of our Work Environment Policy and Massachusetts General Laws Chapter 151 B. In fact Mr. McGravey has also been required to attend a recent Supervisor's workshop on Sexual Harassment that was conducted at the Lawrence City Hall. This attendance was above and beyond the one-on-one counseling in this matter that he received at Family Services.

Finally, I would like to assure you, as I have assured your client, that although Mr. McGravey may have been sent to the same EAP provider, he does not see the same counselor.

Yours truly,

Lawrence P. LeFebre
Personnel Director
City of Lawrence

Enclosure (1)
ec

200 Common Street, Room 302 • Lawrence, MA 01840 • Fax (978) 794-1327 • l_lefebre@cityoflawrence.com

**000025**

# RICHARD K. SULLIVAN

ATTORNEY AT LAW

300 EAST MAIN STREET
MILFORD, MASSACHUSETTS 01757

TELEPHONE (508) 482-0777
FAX (508) 482-0888

June 29, 2004

Michael J. Sullivan, Mayor
City Hall
200 Common Street
Lawrence, MA 01840

RE: Jennifer E. Padellaro

Dear Mayor Sullivan:

Please be advised that the undersigned represents Jennifer E. Padellaro (hereafter "Padellaro"), an employee of the City of Lawrence (hereafter "City") employed in the capacity of Assistant City Clerk. As you know, Padellaro's immediate supervisor is City Clerk James McGravey (hereafter "McGravey").

On April 12, 2000, I wrote to Lawrence P. LeFebre (hereafter "LeFebre"), the then Personnel Director of the City. In that correspondence, I advised LeFebre that Padellaro had been subjected to a hostile work environment for a considerable period of time. More specifically, at that time, Padellaro advised me that McGravey had utilized her computer in the City Clerk's office to visit pornographic web sites, arrange for meetings with "call girls" and "escort services," download sexually explicit jokes, etc. In addition, Padellaro advised me that McGravey had utilized computers of other employees in the City Clerk's office - of which Padellaro had a clear view - to visit pornographic web sites. Padellaro further advised me that a computer in her office displayed a screen with the words "the Best F . . . Transsexuals on the Net." Finally, Padellaro informed me that McGravey had shown pictures of naked women to employees in the City Clerk's office (including Padellaro), told off-color jokes to those employees and made a variety of inappropriate sexual comments.

The conduct which Padellaro described to me in early 2000 was a clear violation of the City's Work Environment Policy as well as the provisions of Massachusetts General Laws Chapter 151B.

**000531**

Michael J. Sullivan, Mayor
June 29, 2004
Page Two

Moreover, the conduct which Padellaro had attributed to McGravey violated the City's policies concerning "E-Mail/or Internet access," violations of which could result in discipline, up to and including discharge.  In April, 2000, I offered the City an opportunity to correct this problem prior to Padellaro filing a Charge of Discrimination with the Massachusetts Commission Against Discrimination (hereafter "MCAD").

After multiple discussions with LeFebre, he provided me assurances that McGravey's inappropriate conduct would not occur again.  By letter dated May 8, 2000, LeFebre wrote to me and stated:

> I again met with Jennifer's (Padellaro's) department head, Mr. McGravey, informing him that I agreed with the charges and allegations made against him.
>
> I then took the following steps:
>
> . I have ordered Mr. McGravey to write a letter of apology to your client.
>
> . I have ordered him to be enrolled in a course offered by our EAP provider that will consist of one on one counseling about sexual harassment and what constituted a hostile work environment.
>
> . I also stated that his subordinates have a right to work in an environment free from harassment, and the right to legal protection against retaliation for this complaint.

Padellaro had hoped McGravey's conduct would not be repeated again.  Unfortunately, recently, McGravey has reverted to his prior pattern of behavior.

More specifically, McGravey has advised female employees of the City Clerk's office that they should visit a web site on which he and his mistress performed pornographic sexually explicit acts.  Indeed, McGravey actually logged onto that web site so that employees of the City Clerk's office could view these acts.  McGravey also informed Padellaro of the existence of this web site.  The employees in the City Clerk's office who were advised by McGravey of the web site informed Padellaro of McGravey's actions.

000532

Michael J. Sullivan, Mayor
June 29, 2004
Page Three

Padellaro cannot and will not continue her employment with
the City in this hostile work environment, nor can the other
female employees in her office.  Since June 21, 2004,
Padellaro has either called in sick or requested to be
placed on vacation leave because of the actions of McGravey.

Padellaro has requested that I write to you concerning
McGravey's continued and outrageous conduct in the
workplace.  Quite frankly, it is time for the City to take
all actions appropriate against McGravey, since it is clear
that this individual cannot function in a workplace with
female employees.  Moreover, since Padellaro is fearful of
retaliation by McGravey, she has requested that, at the
present time, you keep her involvement in this matter
confidential.

Prior to filing an action against the City with the MCAD, I
will afford the City a final opportunity to deal with
McGravey.  Until the City does so, Padellaro will not be
able to return to work in her capacity as Assistant City
Clerk.  In the interim, Padellaro requests that you recredit
her sick leave and vacation leave accounts with all leave
utilized by her on or after June 21, 2004.  (I would suggest
that Padellaro be granted administrative leave with pay
pending her return to work.)  If, in the very near future, I
have not been advised by Padellaro that the City has taken
all appropriate actions against McGravey, I will have no
alternative other than to file a Charge of Discrimination
with the MCAD.

                        Very truly yours,

                        Richard K. Sullivan

RKS/em
cc: Jennifer E. Padellaro

**000533**

LAW OFFICE
OF

# RICHARD C. BARDI

6 BEACON STREET
SUITE 410
BOSTON, MASSACHUSETTS 02108
Telephone 617-227-4040
Facsimile 617-227-3388



*Richard C. Bardi*
*Admitted to Practice in*
*Massachusetts and New York*

*Michael P. Judge*

*December 15, 2004*

## VIA HAND DELIVERY

*Massachusetts Commission Against Discrimination*
*Attn:   Abigail Solo-Colon, Intake Supervisor*
*One Ashburton Place, Room 601*
*Boston, Massachusetts 02108*

Re:   *Jennifer Padellaro, Petitioner -- City of Lawrence, Massachusetts and*
       *James McGravey, Former City Clerk, City of Lawrence, Respondents*

Dear Commissioner Sullivan:

    *Please be advised that I represent the interest of the Complainant, Jennifer*
*Padellaro.*

    *Enclosed please find Ms. Padellaro's Charge of Discrimination against the City*
*of Lawrence, Massachusetts and its former Clerk, James McGravey, along with my*
*Appearance of Counsel.*

    *Kindly provide a charge or docket number to this matter and advise my office of*
*such.  Additionally, kindly file a copy of this Charge of Discrimination with the Equal*
*Employment Opportunity Commission (EEOC).*

    *Thank you for your attention to this matter.*

    *If you have any questions, please do not hesitate to contact my office.*

                 *Very truly yours,*

                 *Richard C. Bardi*

RCB/mpj
Enclosure

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

JENNIFER PADELLARO,

                    Plaintiff

                v.

JAMES MCGRAVEY and
CITY OF LAWRENCE,

                    Defendants

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CIVIL ACTION NO. 05-CV-11788-MLW

## NOTICE OF DEPOSITION OF RICHARD SULLIVAN

To:    Kevin G. Powers, Esq.
       Rodgers, Powers & Schwartz LLP
       18 Tremont Street
       Boston, MA 02108

      PLEASE TAKE NOTICE THAT, pursuant to Rules 30 and 45 of the Federal Rules of

Civil Procedure, defendant City of Lawrence, by its attorneys, will take the deposition upon oral

examination of non-party Richard Sullivan on Thursday, September 28, 2006 at 10:00 a.m. at the

offices of Foley Hoag LLP, World Trade Center West, Boston, Massachusetts 02110, before a

person qualified to administer oaths. The oral examination will continue from day to day until

completed.

      The deponent will be required to bring all documents referred to on the attached

Schedule A.

B3247632.1

You are invited to attend and cross-examine.

CITY OF LAWRENCE,

By its attorneys:

_____

James W. Bucking, BBO #558800
Scott C. Merrill, BBO #631008
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  August 31, 2006

## EXHIBIT A

Any and all documents and records concerning and/or related to Jennifer Padellaro including, without limitation, all notes, bills, invoices, correspondence, diaries, appointment logs, phone logs, phone records, calendars and memoranda, whether in electronic or hard copy form.

## AFFIDAVIT OF SERVICE

**State of Massachusetts**         **County of Suffolk**                    **U.S.D. Court**

Case Number: 05-CV-11788-MLW

Plaintiff:
**Jennifer Padellaro**

vs.

Defendant:
**James McGravey and City of Lawrence**

For:
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA  02210

Received by STOKES & LEVIN on the 1st day of September, 2006 at 10:29 am to be served on **Law Offices of Richard Sullivan., 300 East Main Street Milford, MA 01757**.

I, Wendell Davison, being duly sworn, depose and say that on the **1st day of September, 2006** at **3:03 pm, I**:

Served the within named corporation by delivering a true copy of the **Subpoena in a Civil Case** with the date and hour of service endorsed thereon by me to Robin Lewis as office assistant authorized to accept service on behalf of within named corporation and compliance with state statutes.

**Description** of Person Served:  Age: 45,  Sex: F,  Race/Skin Color: White,  Height: 5'5,  Weight: 140, Hair: Brown,  Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 11th day of September, 2006 by the affiant who is personally known to me.

NOTARY PUBLIC MARIA BARROS
Notary Public
Commonwealth of Massachusetts
My Commission Expires
July 21, 2010

**Wendell Davison**
Civil Process Division

**STOKES & LEVIN**
**27 Glen Street**
**Stoughton, MA  02072**
**(781) 341-8390**

Our Job Serial Number: 2006002715
Ref: Scott Merrill

Copyright © 1992-2001 Database Services, Inc. - Process Server's Toolbox V5.5f